Mullins v. City of NY

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: November 22, 2010          Decided: August 5, 2011)

_____

EDWARD D. MULLINS, ET AL.,

*Plaintiffs-Appellants*,

—v.—

CITY OF NEW YORK,

*Defendant-Appellee.*

Docket No. 09-3435-cv

_____

B e f o r e : NEWMAN, CALABRESI, KATZMANN, *Circuit Judges.*

_____

Appeal from the July 20, 2009 judgment of the District Court for the Southern District of New York (Scheindlin, *J.*) for the defendant-appellee City of New York ("the City"), following a jury verdict. Giving controlling deference to the Secretary of Labor's interpretation of her own regulations, we hold that the primary duty of plaintiffs, New York City Police Department sergeants, is not "management," and thus plaintiffs do not qualify for the "bona fide executive" exemption from the overtime pay requirements of the Fair Labor Standards Act of 1938 ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq*. Accordingly, we conclude that the district court erred in entering judgment for the City, REVERSE the district court's judgment, and REMAND with instructions to enter judgment in favor of plaintiffs.

_____

STEPHEN P. YOUNGER (Catherine A. Williams, A. Leah Vickers, Patterson Belknap Webb & Tyler LLP, New York, New York; Gregory K. McGillivary, Woodley & McGillivary, Washington D.C.; Andrew Quinn, Quinn & Mellea, White Plains, New York, *on the brief*), Patterson Belknap Webb & Tyler, LLP, New York, New York, *for Plaintiffs-Appellants*.

KAREN M. GRIFFIN, Assistant Corporation Counsel (Francis F. Caputo, James Lemonedes, *on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, New York, *for Defendant-Appellee*.

M. PATRICIA SMITH, Solicitor of Labor; Jennifer S. Brand, Associate Solicitor; Paul L. Frieden, Counsel for Appellate Litigation; Dean A. Romhilt, for *amicus curiae* U.S. Department of Labor.

_____

PER CURIAM:

On April 19, 2004, Plaintiffs-Appellants, sergeants in the New York City Police Department ("NYPD"), brought this lawsuit alleging denial of overtime pay under the Fair Labor Standards Act of 1938 ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq.*, for the period covering April 19, 2001 to the present. They now appeal from a July 20, 2009 judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) in favor of defendant-appellee City of New York ("the City") and seek review of, *inter alia*, the district court's November 6, 2007 Opinion and Order denying their motion for summary judgment and *sua sponte* granting partial summary judgment in favor of the City. The Department of Labor ("DOL"), appearing as *amicus curiae* at this Court's invitation, has provided its interpretation of the Act's overtime pay regulations pertinent to this case. When an agency's regulations are ambiguous, a court must defer to the agency's interpretation of its own regulations, unless that interpretation is "plainly erroneous or inconsistent with the regulation[s] or there is any other

reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *See Talk Am., Inc. v. Michigan Bell Tel. Co. dba AT&T Michigan*, 131 S. Ct. 2254, 2261 (2011) (internal quotation marks omitted). This appeal primarily requires us to determine whether the DOL's interpretation of its regulations is "plainly erroneous or inconsistent with the regulation[s]." *Id.* In our limited role, we conclude that the DOL's interpretation is not "plainly erroneous or inconsistent" with the pertinent FLSA regulations and thus is entitled to controlling deference. Applying that interpretation to the facts of this case, we conclude that the primary duty of sergeants is not "management" and therefore plaintiffs do not qualify for the "bona fide executive" exemption from the FLSA's overtime pay requirements. Accordingly, we reverse the district court's judgment and remand the case to the district court with instructions to enter judgment in favor of plaintiffs and for further proceedings not inconsistent with this opinion.

**BACKGROUND**

I.      The FLSA's Overtime Pay Requirement

Subject to certain exceptions, the FLSA mandates overtime pay for employees who work more than 40 hours per week. Specifically, section 7(a)(1) of the Act provides that

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*See* 29 U.S.C. § 207(a)(1). Relevant here is the Act's exemption in section 13(a)(1) from the overtime requirement for workers who are "employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1).

-3-

Until August 23, 2004, this exemption relieved employers from the otherwise applicable obligation to pay overtime wages if the employer could demonstrate, *inter alia*, that the relevant employees (1) earned at least $250 per week, (2) had a "primary" duty of "management," and (3) had a primary duty that included customarily and regularly directing the work of two or more employees. 29 C.F.R. § 541.1(f) (2003). This was known as the "short test" for determining whether an employee was considered an exempt executive.[1]

"Primary duty" is defined by the regulations as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). To determine whether plaintiffs' performance of these exempt activities constitutes their "primary duty," a court must consider "the character of an employee's job as a whole." *Id.*

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.*

> The relevant regulations define "management" as including, but not limited to,
>
> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; . . . providing for the safety and security of the employees or the property;

---

[1] The "short" and "long" forms of the primary duties test were eliminated by the Department of Labor's ("DOL") 2004 revisions. The "long test" applied when an employee earned less than $250 per week. *See* 29 C.F.R. §541.1(a)-(e) (2003).

planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

On April 23, 2004, the United States Secretary of Labor ("Secretary") issued revisions to the Part 541 regulations, which took effect on August 23, 2004. Under the revised version of the regulations, an exempt "executive" is an employee

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ; (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof ; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

In addition to revising the executive exemption in 2004, the DOL promulgated additional provisions defining the scope of the FLSA exemptions. One of these provisions was the so-called "first responder" regulation. The regulation provides, in relevant part, that the executive exemption does not apply to

> police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. § 541.3(b)(1).

The first responder regulation further provides that

[s]uch employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under section 13(a)(1) of the Act merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire.

*Id.* § 541.3(b)(2).

II.    Plaintiffs' Duties

Plaintiffs are more than 4,000 sergeants in the NYPD who brought this action on April 19, 2004, asserting their entitlement to overtime pay requirements pursuant to the FLSA for the time period of April 19, 2001 to the present. The parties do not dispute the basic facts concerning NYPD sergeants' duties. Given the large number of plaintiffs, the parties, at the direction of the district court, identified a short list of deponents (also referred to as "test plaintiffs") representing sixteen job categories, which were in turn organized into three groups.

The first group of test plaintiffs included the following six categories of sergeants:

- Housing Patrol Unit sergeants, who patrol public housing facilities and accompany police officers in conducting patrols of public housing buildings for criminal activity. App. II 377 ¶ 9.

- Bike Unit sergeants, who patrol housing developments on bike or foot for suspicious activity. *Id.* ¶ 10.

- Anti-Crime Unit sergeants, who patrol areas prone to violent crime, working alongside police officers in the field. *Id.* at 378 ¶ 11.

- Street Narcotics Enforcement Unit sergeants, who focus on narcotics sales in and around public housing developments. *Id.* ¶ 12.

-6-

- Mounted Unit sergeants, who patrol the City's streets and parks on horseback, ensuring pedestrian safety and maintaining crowd control. *Id.* at 378-79 ¶ 13.

- Highway Patrol Unit sergeants, who patrol city highways and respond to vehicle and pedestrian accidents. *Id.* at 379 ¶ 14.

These categories of sergeants perform general law enforcement activities as well as specialized law enforcement activities undertaken only by sergeants as opposed to lower-ranked police officers; sergeants are the second-lowest ranked officers in the NYPD. For example, sergeants are responsible for responding to incidents involving felonies, firearm discharges, and emotionally disturbed individuals. *See Mullins v. City of N.Y.*, 523 F. Supp. 2d 339, 342 (S.D.N.Y. 2007). Further, as the district court noted:

> While their specific duties vary according to unit, sergeants are generally involved in activities that include pursuing, restraining, and apprehending suspects. Sergeants interview witnesses, suspects, victims, and vehicle operators. They are dispatched to all arrests in their unit and must respond when directly dispatched. Sergeants are responsible for verifying whether probable cause to arrest a suspect exists. They also verify the target location for search warrants and determine whether a warrant is appropriate based on their judgment and evaluation as to the existence of probable cause. Sergeants secure and determine the size and scope of a crime scene prior to the arrival of the Crime Scene Unit. Sergeants also make the determination as to whether a show-up or line-up identification procedure may be conducted under the circumstances.

*Id.* at 342 (footnotes omitted).

Additionally, sergeants take charge of operations at crime scenes if they are the highest ranking officers present. *Id.* at 344. Only sergeants can use certain equipment, such as tasers, water cannons, and restraining tape. *Id.* at 342. Sergeants also complete "unusual occurrence reports," which "provide the written details of a significant or unusual occurrence"; write reports regarding any car chase; and review evidence vouchers and verify complaint reports, stop-and-

frisk reports, and arrest reports. *Id.* at 343. Sergeants' additional responsibilities include instructing police officers on proper procedures, directing them to surveil certain areas, and monitoring their use of proper equipment and accurate recording of daily activities. *Id.*

III.    Procedural History

After discovery was completed for the initial test group, plaintiffs moved for partial summary judgment. The district court's opinion denying the motion began its analysis by acknowledging that the DOL had promulgated a new regulation, effective August 23, 2004, that entitles "first responders" to "overtime pay even if they direct the work of other police officers because their primary duty is not management . . . ." 523 F. Supp. 2d at 354 (quoting 69 Fed. Reg. 22122-01, 22129 (Apr. 23, 2004)). The district court concluded, however, that the DOL had "no intention" in promulgating this regulation "of departing from [] established case law," *id.* (omission in original), and therefore proceeded to apply the general primary duties test to the test sergeants to determine whether their primary duty was management.

The district court applied the "short" test under the pre-August 23, 2004 regulations to the test plaintiffs for the time period of April 19, 2001 up to August 23, 2004, and rejected the City's belated contention that the district court's summary judgment ruling, based on the testimony of the randomly selected test plaintiffs, should not apply to all plaintiffs. 523 F. Supp. 2d at 355. The district court concluded that for the period covered by the "short test," the test sergeants' primary duty was management, agreeing with the City that the sergeants were "'front-line NYPD supervisors' who 'direct' and 'apportion' the work of police officers in the field." *Id.* at 356 (footnote omitted) (quoting the City's briefs). The district court concluded that "plaintiffs' principal value to [the City] is their service as 'immediate supervisors in the chain of

command' to whom subordinates look for 'guidance and direction,' particularly when in the field." *Id.* at 358-59. Based on that determination, the district court *sua sponte* granted partial summary judgment to the City for the claims covering this period. *Id.* at 356, 359.

For plaintiffs' claims covering the period of August 23, 2004 to the present, the district court further considered whether, under the test set forth in the new regulations, plaintiffs have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). Plaintiffs asserted, and defendants did not dispute, that they do not have authority to hire or fire employees. The City nevertheless argued that plaintiffs made suggestions and recommendations that were given particular weight in that they engage in disciplinary actions and that they prepared performance evaluations that play a critical role in the advancement of police officers. The district court concluded that genuine issues of material fact in this respect precluded the grant of partial summary judgment as to this period. 523 F. Supp. 2d at 360.

After this Court denied the district court's certification for leave to appeal, a five-day jury trial was held for the first group of sergeants, in order to decide the disputed fact issue described above. The jury returned a verdict for the City. Plaintiffs, who had moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure following the close of evidence, renewed their motion after the verdict pursuant to Rule 50(b) and also moved for a new trial under Rule 59. The district court denied these motions in an opinion and order dated October 17, 2008. *Mullins v. City of N.Y.*, 2008 WL 4620709 (S.D.N.Y. Oct. 17, 2008). In that opinion, the court concluded that one of the categories of evidence relied on by the City could

not support a reasonable verdict in the City's favor, but nonetheless determined that the balance of the evidence amply supported such a verdict. *Id.* at \*3-4. Plaintiffs moved for reconsideration of the court's denial of their Rule 50(b) motion, and the district court granted the motion for reconsideration and revisited its decision, but ultimately adhered to its October 17, 2008 opinion and order. *Mullins v. City of N.Y.*, 2008 WL 5329313 (S.D.N.Y. Dec. 18, 2008). The parties then stipulated that the summary judgment ruling and jury verdict would bind all plaintiffs, not only the first group of sergeants. The stipulation was approved and entered in a final judgment under Rule 54(b). The district court retained jurisdiction over plaintiffs' retaliation claims.

Plaintiffs timely appealed from this judgment. After hearing oral argument, this Court requested that the Secretary submit her views as to whether plaintiffs satisfy the executive exemption from the FLSA's overtime pay requirements. Upon receipt of the Secretary's *amicus* letter brief, the parties were invited to submit responses, which they have since filed.

In her *amicus* brief, the Secretary asserts that the district court failed to take into proper consideration the new first responder regulation when applying the primary duties test to plaintiffs and, therefore, erred in concluding that plaintiffs' primary duty is "management." *Amicus Curiae* Letter Brief of the U.S. Dep't of Labor ("DOL *Amicus* Br.") at 1. The Secretary explains that section 541.3(b) addresses the second element of the executive exemption as applied to police officers and other first responders. *See id.* at 2. The regulation applies to any officer who, "regardless of rank or pay level," performs the types of duties enumerated in section 541.3(b)(1), and therefore, must inform any analysis when "the employees at issue are police officers who perform law enforcement work in the field." *Id.* at 3.

Although the supervision undertaken by first responders while conducting field law enforcement is considered "non-exempt" for the purposes of the applicable executive exemption under the FLSA, the Secretary notes that the new first responder regulation does not "purport to make all police officers non-exempt; the determining factor remains their primary duty." *Id.* at 5 (citing 29 C.F.R. § 541.700(a)). The Secretary thus interprets the first responder regulation to mean that when first responders direct the work of subordinate officers while performing the types of law enforcement duties enumerated in section 541.3(b)(1), such supervision does not constitute management that, in applying the primary duties test, would satisfy the second prong of executive exemption.

The Secretary derives additional support for her interpretation from the regulatory preamble to the 2004 revisions to the Part 541 overtime regulations, which indicated that the revisions were designed to directly address the exempt status of police officers and other first responders. *See* 69 Fed. Reg. at 22129; DOL *Amicus* Br. at 4. In the preamble, "Defining and Delimiting the Exemptions for Executive . . . Employees" ("preamble"), the DOL stated that

> This new subsection 541.3(b) responds to commentators . . . expressing concerns about the impact of the proposed regulations on police officers, fire fighters, paramedics, emergency medical technicians (EMTs) and other first responders. The current regulations do not explicitly address the exempt status of police officers, fire fighters, paramedics or EMTs. This silence in the current regulations has resulted in significant federal court litigation to determine whether such employees meet the requirements for exemption as executive, administrative or professional employees.
>
> Most of the courts facing this issue have held that police officers, fire fighters, paramedics and EMTs and similar employees are not exempt because they usually cannot meet the requirements for exemption as executive or administrative employees. . . .
>
> The Department has no intention of departing from this established case law. Rather, for the first time, the Department intends to make clear in these revisions to the Part 541 regulations that such police officers, fire fighters, paramedics, EMTs and other

first responders are entitled to overtime pay. *Police sergeants, for example, are entitled to overtime pay even if they direct the work of other police officers because their primary duty is not management or directly related to management or general business operations . . . .*

69 Fed. Reg. at 22129 (emphasis supplied).

The Secretary reiterates that "[t]he preamble discusses eight court decisions that concluded that the first responder employees at issue were non-exempt. Immediately following the discussion of those eight court decisions, the preamble states: 'The Department has no intention of departing from *this* established case law.'" DOL *Amicus* Br. at 8 (citation omitted). "By referring to 'this established case law,' the DOL unmistakably approved of these specific court decisions that had found police officers and other first responders, based on their duties, to be non-exempt. Thus, police officers' field law enforcement work is not exempt management work." *Id.* at 4 (citation omitted).

Plaintiffs endorse the Secretary's interpretation of the first responder regulation. They argue that because the Secretary promulgated the first responder regulation pursuant to her delegated authority, her interpretation of that regulation is entitled to controlling deference in that it is not plainly erroneous or inconsistent with the first responder regulation or any other pertinent FLSA regulation. Brief for Plaintiffs-Appellants in Response to *Amicus Curiae* The United States Department of Labor ("Pls. Supp. Br.") at 6-7. Plaintiffs therefore agree with the Secretary's conclusion that police sergeants are not exempt because their primary duty is not management or supervision, but rather "front line law enforcement." Brief for Plaintiffs-Appellants at 35. Plaintiffs further argue that the Secretary's interpretation, which only addressed the period of August 23, 2004 to the present, supports their position that they are also entitled to overtime pay for the period beginning on April 19, 2001. Pls. Supp. Br. at 7-12.

-12-

The City argues in opposition that the first responder regulation simply reiterates the applicability of the general primary duties test to first responders but does not change the content of that test. Supplemental Brief of the City of New York ("Def. Supp. Br.") at 2-3. The City acknowledges that the activities enumerated in section 541.3(b)(1) are not management activities; management activities are set forth in section 541.102. *Id.* at 3. The City interprets 541.3(b)(2) simply to confirm that, for the purposes of the executive exemption, officers whose primary duty is to perform the tasks enumerated in section 541.3(b)(1) do not lose their exempt status merely because they end up undertaking limited supervisory activity while performing those tasks. *Id.* Thus, according to the City, the first responder regulation does not classify as non-exempt supervisory activities that are performed "in the field" or "in conjunction with" law enforcement. *Id.* at 4. If the first responder regulation were designed to exempt "management" activities when done "in the field" or "in conjunction with" field law enforcement, the regulation, argues the City, would have included language referring to "any management activities listed in section 541.102 which are performed in conjunction with these activities." *Id.* at 5. The City notes that the preamble, on which the Secretary relies, includes as managerial tasks "directing operations at crime, fire or accident scenes, including deciding whether additional personnel or equipment is needed." *Id.* The City thus charges the Secretary with creating an overly "expansive and improper reading" of the first responder regulation, and, in so doing, in effect eliminating the primary duty test for first responders. *Id.* at 5, 7. As a result, according to the City, the Secretary improperly extends the example given in section 541.3(b)(2) to remove all direction in the field as a management activity. *Id.* at 6. First responders' management activities are thus rendered "non-exempt" even when first responders perform

-13-

management activities that would be exempt management under the standard primary duties test. *Id.* at 7.

Based on its view that the Secretary's interpretation is erroneous and inconsistent with other FLSA provisions, the City argues that deference to the Secretary's position is not appropriate. *Id.* at 4, 8. The City also contends that the Secretary has exceeded her statutory authority by going beyond Congress's delegation of authority to the Secretary to define and delimit the terms "bona fide executive, administrative or professional" for purposes of the exemption. *See* 29 U.S.C. § 213(a)(1); Def. Supp. Br. at 8. The City claims that by interpreting the first responder in this manner, the Secretary has "announce[d] an industry specific exception" applicable only to "first-responders" despite the fact that the FLSA "is not an industry specific statute." Def. Supp. Br. at 9 (quoting *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 398 (9th Cir. 2011)). As a result, according to the City, the Secretary has exceeded her statutory authority by drafting a new rule, one that exempts an entire category of workers, and bypassing the normal notice-and-comment procedures. *Id.* at 11. Finally, the City emphasizes that no deference should be afforded to the Secretary's opinion as to whether sergeants' primary duty is management since the role of applying the law to the facts of a particular case remains the province of the judiciary, not that of the agency, unless Congress has expressly delegated that authority. *Id.* at 12. Accordingly, although the City does not dispute that sergeants engage in general law enforcement duties, it contends that while sergeants are in the field, they supervise lower-ranked patrol officers as their primary duty and therefore the district court's decision should be affirmed. *Id.* at 13, 15.

**DISCUSSION**

Our threshold and principal task on appeal is to determine the level of deference this Court owes to the Secretary's interpretation of the pertinent FLSA regulations. The Secretary limited her interpretation of the Part 541 regulations to plaintiffs' claims for the time period of August 23, 2004 to the present. *See* DOL *Amicus* Br. at 2 n.2. Those claims are governed by the current version of the Part 541 regulations, and only the second and fourth prongs of the executive exemption — whether plaintiffs' primary duty is management and whether their recommendations regarding other employees' change of status are given particular weight — are in issue here. *See Mullins*, 523 F. Supp. 2d at 355-60. We therefore turn first to the Secretary's interpretation of her regulations, as applied to plaintiffs' claims for the period of August 23, 2004 to the present. We then address plaintiffs' claims for the period of April 19, 2001 up to August 23, 2004, which is governed by the previous version of the bona fide executive exemption.

"We review *de novo* a district court's grant or denial of summary judgment, viewing the record in the light most favorable to the party against whom summary judgment is sought." *In re Novartis Wage and Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010) (internal quotation marks and citation omitted). The district court's conclusion that plaintiffs' primary duty is "management" is a question of law subject to *de novo* review. *See id.* "Because the FLSA is a remedial law, exemptions to the overtime pay requirement are narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Id.; see also Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The employer who invokes the exemption bears

the burden of establishing that the employee falls within the exemption. *See Reiseck*, 591 F.3d at 104.

I.      Deference to the Secretary of Labor's Interpretation

Deference to an agency's interpretation is owed only when the regulation at issue is ambiguous. *See, e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000). The meaning of the first responder regulation, when juxtaposed with the text of the bona fide executive exemption and, in particular, with the definition of "management" under 29 C.F.R. § 541.102, is at best ambiguous. The City's own argument against the Secretary's interpretation highlights the ambiguity. The City notes that among the list of managerial tasks that are mentioned in the preamble to the 2004 revisions are "directing operations at crime, fire or accident scenes, including deciding whether additional personnel or equipment is needed." Def. Supp. Br. at 5 (quoting 69 Fed. Reg. at 22130). At the same time, the first responder regulation qualifies those types of activities and deems them not to be "management." *See* 29 C.F.R. § 541.3(b)(1). Moreover, plaintiffs in this case engage in types of activities that correspond with management as defined in 29 C.F.R. § 541.102 — such as "directing subordinates to canvas a certain area, positioning officers in the field for law enforcement operations, and guiding subordinates on proper police procedures," *Mullins*, 523 F. Supp. 2d at 358 (footnote omitted) — and thus it is not entirely clear, for the purposes of the executive exemption, whether such activities should be considered exempt "management" tasks pursuant to section 541.102 or as "non-exempt" pursuant to section 541.3(b).

Since the regulation is ambiguous, we turn to the Secretary's interpretation of it in her *amicus* brief. The Secretary's interpretation is entitled to controlling deference, even if

articulated in an *amicus* brief, unless it is "'plainly erroneous or inconsistent with the regulation[s]' or there is any other 'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" *See Talk Am., Inc.,* 131 S. Ct. at 2261 (quoting *Chase Bank USA, N.A. v. McCoy*, 562 U.S. ___, ___, 131 S. Ct. 817, 880 (2011)); *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (noting that where the DOL's "interpretation of its own regulation reflects its considered views . . . [,] we have accepted that interpretation as the agency's own, even if the agency set those views forth in a legal brief"); *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (affording deference to the Secretary's own interpretation of DOL regulation advanced in *amicus* brief).

In *Auer*, the Supreme Court deferred to the then-Secretary of Labor's interpretation of his own regulation, and held that the fact the interpretation was contained in an *amicus* brief did not "in the circumstances of this case, make it unworthy of deference." 519 U.S. at 462. The Supreme Court justified deference in that case by noting that "[t]he Secretary's position is in no sense a 'post hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack." *Id.* The Court further added that "[t]here is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Id.*

A court's role in this circumstance is circumscribed. It is without authority to substitute its own independent interpretation of an agency's regulations for that of the agency. Applying these principles to this case and for the reasons set forth below, we find that the Secretary's interpretation is not plainly erroneous or inconsistent with her regulations and there is nothing to suggest that her interpretation reflects anything but the Secretary's "fair and considered

-17-

judgment on the matter in question." Her interpretation, therefore, warrants "controlling" *Auer* deference by this Court. *See, e.g.*, *Talk Am., Inc.*, 131 S. Ct. at 2261.

Contrary to the City's position, the Secretary's interpretation does not exceed her statutory authority. Title 29, Section 213(a)(1) of the United States Code delegates authority to the Secretary to "define[] and delimit[]" the scope of the exemptions from the FLSA's overtime requirements, and the new Part 541 regulations were promulgated pursuant to the Secretary's delegated authority. *See* 69 Fed. Reg. at 22123-24. The Secretary's interpretation does not articulate an "industry specific" exception by separating out first responders for particular treatment, and even if it did, industry-specific exceptions are not precluded by the text of the statute. Based on Congress' express grant of authority, the Secretary established the scope of "management" by delimiting that term and excluding certain types of activities that are typically performed by police officers, firefighters, investigators "and similar employees." 29 C.F.R. § 541.3(b). The regulation thus focuses on particular types of activities, which are performed generally by front-line responders, rather than on a particular industry. Even to the extent that the Secretary's regulation could be interpreted to treat first responders differently than workers in other industries, the Secretary's interpretation does not, as the City maintains, depend fundamentally on the location of those activities. That such activities occur "in the field" is not the dispositive element; the Secretary's reasoned justification is that such activities, when performed by first responders in the course of their front-line duties, do not involve the "management of the enterprise in which the employee is employed," *id.* § 541.3(b)(2), and therefore should not be deemed "management."

The City argues that neither the plain language of the regulation nor the preamble

supports the Secretary's interpretation of the first responder regulation as categorizing as "non-exempt" management activities undertaken in the field. The Secretary's interpretation does not, however, classify all activities if they are performed in the field as "non-exempt" regardless of whether they resemble "management." Rather, the Secretary interprets the first responder regulation to mean that "police officers' field law enforcement work is not exempt management work." DOL *Amicus* Br. at 4. The Secretary further explains that "field law enforcement work does not become management simply because the police officer 'directs the work of other employees' while performing such work." *Id.* at 5. The City claims that the Secretary interprets section 541.3(b)(2)'s example too broadly by construing "directs" to mean "all management activities" and "conduct an investigation" to mean "in the field" or "in conjunction with law enforcement work." Def. Supp. Br. at 5. However, as the Secretary's controlling interpretation explains, the example provided in section 541.3(b)(2) simply illustrates the first responder regulation's essential principle: the performance of non-exempt field law enforcement work that involves supervision of other officers does not transform that non-exempt work into exempt management. DOL *Amicus* Br. at 5.

The City's argument that the Secretary's interpretation of the first responder regulation is inconsistent with the other applicable Part 541 regulations because it eliminates the primary duties test with respect to all first responders rests on the erroneous assumption that if one officer supervises another officer in the course of performing law enforcement work, that officer may never qualify as an exempt executive. Def. Supp. Br. at 7. In the preamble, however, the DOL indicated that

> Federal courts have found high-level police and fire officials to be exempt executive
> or administrative employees only if, in addition to satisfying the other pertinent

-19-

requirements, . . . their primary duty is performing managerial tasks such as . . . directing operations at crime, fire or accident scenes, including deciding whether additional personnel or equipment is needed.

69 Fed. Reg. at 22130. The Secretary further explains that "[t]he cases identified in the preamble" finding that high-level police officers were exempt executive employees "involved the high-level direction of operations by fire chiefs and fire captains who generally did not engage in any front-line firefighting." DOL *Amicus* Br. at 5. Hence, the Secretary in her *amicus curiae* brief to the district court stated that "[t]he types of managerial duties performed by some high-ranking police officers . . . reinforce the Secretary's position that front-line law enforcement, such as patrolling, firing taser guns, serving warrants, participating in and making arrests, investigating crimes, interviewing and interrogating witnesses, and securing crime scenes are front-line law enforcement activities that are not management tasks under section 541.3(b)." *Id.* at 6 (quoting District Court *Amicus* Br. at 11) (emphasis omitted) (ellipsis in original); *see also* 29 C.F.R. § 553.216 ("[H]igh ranking police officials who are in engaged in law enforcement activities, may also, depending on the facts, qualify for the section 13(a)(1) exemption as "executive" employees.").

The Secretary does not, as a result, eliminate the primary duties test in her interpretation of the first responder regulation. While "directing operations at crime, fire or accident scenes" appears, at first blush, to be a type of management that sergeants undertake, when their supervisory activities are viewed within the context of the first responder regulation as interpreted by the Secretary, it becomes apparent that, because these activities form part of sergeants' primary field law enforcement duties, such supervision is not to be deemed "management." *See* DOL *Amicus* Br. at 5. Even to the extent that the City identifies a tension

between the text of the first responder regulation and the primary duties test, this is, at best, an ambiguity that does not preclude deference to the Secretary's interpretation. Addressing that ambiguity, the Secretary argues that certain managerial tasks such as "directing operations at crime, fire or accident scenes" when performed by high-level personnel who typically did not engage in any front-line activities would still be considered "management." *See* DOL *Amicus Br.* at 5 (discussing preamble and cases). The Secretary's interpretation is consistent with both the text of the first responder regulation and the bona fide executive exemption and therefore far from clearly erroneous.

Nor is the Secretary's interpretation a departure from earlier agency interpretations. The City argues that the preamble's discussion of *Department of Labor v. City of Sapulpa, Oklahoma*, 30 F.3d 1285, 1288 (10th Cir. 1994), demonstrates that the Secretary has departed in its interpretation in its *amicus* brief from the interpretation provided in the preamble. In that case, the preamble noted, the Tenth Circuit affirmed the district court's finding that department captains were not exempt executives because, *inter alia*, they were not in charge of most fire scenes and had no authority to call additional personnel to a fire scene. 69 Fed. Reg. at 22129. For the City, then, this suggests that a lack of authority "in the field" contributed to the captains' lack of exempt status. Def. Supp. Br. at 7. However, the Secretary's interpretation here is consistent with the Tenth Circuit's decision. There, the district court found that higher-ranking officers were more often than not the first to arrive at a fire scene and direct operations, and thus that particular management function could not be attributed to the captains. This is consistent with the Secretary's interpretation that the primary duties test still applies and that certain supervisory functions in the field, when not performed as part of an officer's primary field law

enforcement duties, can still qualify as "management."

The Secretary's conclusion is also consistent with this Court's decision in *Reich v. New York*, 3 F.3d 581 (2d Cir. 1993), *overruled by implication on other grounds by Seminole Tribe v. Florida*, 517 U.S. 44 (1996), which the DOL cited approvingly in the preamble. *See* 69 Fed. Reg. at 22129. In *Reich*, this Court affirmed the lower court's ruling that investigators who conducted criminal investigations and supervised state troopers' investigations were not engaged in exempt administrative activity. 3 F.3d at 587-88. As the preamble acknowledged, this Court held that their primary duty was investigation, "not administering the affairs of the department itself." 69 Fed. Reg. at 22129. Although the administrative exemption is not at issue in this case, the first responder regulation addressed the scope of the section 13(a)(1) exemptions generally, and thus *Reich* provides additional support for the claim that the Secretary has not departed in her current interpretation of the first responder regulation from previous agency interpretations.

Accordingly, we conclude that the Secretary's interpretation of the first responder regulation, in relationship to the bona fide executive exemption, is neither plainly erroneous nor inconsistent with her own regulations or previous interpretations thereof, and thus is entitled to controlling deference by this Court.

II.     Applying the Secretary's Interpretation to Plaintiffs' Claims for August 23, 2004 to the
        Present

The Secretary's controlling interpretation of the first responder regulation dictates the conclusion that plaintiffs' primary duty is not management. The undisputed record on summary judgment demonstrates that plaintiffs in this case clearly perform the type of work enumerated in

the first responder regulation. The district court concluded that sergeants regularly conduct investigations and inspections for violations of law by "verifying whether probable cause to arrest a suspect exists, determining whether a show-up identification procedure is justified, [and] making tactical decisions such as when to retreat from a crime scene." *Mullins*, 523 F. Supp. 2d at 358 (footnotes omitted). Duties that are specific to sergeants and not handled by subordinate police officers similarly relate to their law enforcement tasks: "Sergeants are dispatched and required to respond when situations involving emotionally disturbed individuals arise, as police officers are not permitted to take such people into custody. In handling suspects, sergeants are authorized to use certain restraining devices that are not available to police officers [including] tasers, water cannons, and restraining tape." *Id.* (footnote omitted). Since plaintiffs "perform law enforcement duties alongside patrol officers in the field," *id.* at 357 (footnote omitted), and "generally spend much of their time in the field with their subordinates," *id.* at 358 (footnote omitted), the first responder regulation, 29 C.F.R. § 541.3(b), applies to the analysis of whether they may be deemed "exempt" executives under the FLSA. *See* DOL *Amicus* Br. at 3-4.

In the Secretary's view, the district court misinterpreted the first responder regulation and its proper application to this case. We agree. The district court began its analysis by acknowledging that the DOL had promulgated the first responder regulation but observed that "the new regulations do not depart from [] 'established case law' . . . in which application of the duties test determines whether a given employee is exempt." 523 F. Supp. 2d at 354 (brackets in original) (internal quotation marks omitted). The district court thus determined that the new regulation simply reiterated that courts apply the primary duties test to determine whether an exemption from the overtime pay requirements is satisfied. Applying the general primary duties

-23-

test to the test plaintiffs without further acknowledgment of the first responder regulation, the district court noted that "[i]t is undisputed that plaintiffs perform law enforcement duties alongside patrol officers in the field," but ultimately held that "plaintiffs are front-line supervisors of subordinate police officers and their primary duty is management." *Id.* at 357.[2] However, the district court's omission of the word "this" from its citation to the preamble's reference to the "established case law" "alter[ed] [the] intended meaning" of the preamble. DOL *Amicus* Br. at 4. As a result, the district court did not treat as "non-exempt" supervisory activities undertaken by plaintiffs in the course of performing their regular law enforcement duties. "[T]he fact that the sergeants direct police officers while they perform field law enforcement activities does not transform the field law enforcement into management." DOL *Amicus* Br. at 10.

Because the district court misconstrued the regulation's meaning, the district court erroneously concluded that plaintiffs' supervision of subordinate police officers while conducting law enforcement work is "management." *See* DOL *Amicus* Br. at 7-8. Although the City argues that the district court correctly classified as "exempt" various supervisory activities undertaken by sergeants such as "'apportioning work among [officers],' 'determining the techniques' and personnel to be used, 'reassigning and reallocating officers' and other activities described in 29 CFR 541.102," Def. Supp. Br. at 13 n.13 (alteration in original), these activities are performed as part of plaintiffs' field law enforcement duties. Indeed, the Secretary reiterates that "giving direction and exercising discretion while performing field law enforcement work do

---

[2] Plaintiffs assert that the district court improperly weighed the evidence before it, thus usurping the jury's role, but they raise this argument for the first time in their reply brief and therefore we will not consider it. *See Castro v. Holder*, 597 F.3d 93, 95-96 n.2 (2d Cir. 2010).

not transform [sergeants'] non-management primary duty in a management primary duty." DOL *Amicus* Br. at 11.

In light of the Secretary's controlling interpretation of the first responder regulation, the fact that plaintiffs spend the majority of their time performing non-exempt work in the field, *see Mullins*, 523 F. Supp. 2d at 345-46, 357-58, leads to the conclusion that the sergeants' primary duty is not management but field law enforcement. *See* DOL *Amicus* Br. at 11. Although the City argues that no deference should be given to the Secretary's interpretation as applied to the facts of this case, the City concedes that the Secretary's interpretation compels this outcome: "Since it is undisputed that sergeants spend the majority of their time in the field, the conclusion would, under the Secretary's new interpretation, be inevitable." Def. Supp. Br. at 6 n.5. This conclusion is buttressed by the fact that the district court's factual recitation confirms that sergeants perform few of the "management" tasks discussed in the preamble or listed in 29 C.F.R. § 541.102 outside the context of their field law enforcement duties. For example, sergeants are required to complete performance evaluations of subordinate officers on a monthly basis. *See Mullins*, 523 F. Supp. 2d. at 344; *see also* 69 Fed. Reg. at 22130 (listing "evaluating personnel performance" as among types of activities viewed by courts as "management"). Sergeants also have the authority to issue reports to commanding officers when a subordinate police officer is "derelict in his duties." *See Mullins*, 523 F. Supp. 2d at 344-45. Additionally, sergeants are responsible for their subordinates' "appearance, punctuality, attendance, productivity, good order and discipline." *Id.* at 344 (footnote omitted). Thus, under the Secretary's interpretation of the first responder regulation and the definition of "primary duty," we necessarily conclude that the principal benefit that sergeants confer to the NYPD is their

performance of law enforcement duties in the field and concomitant supervision of lower-ranking officers while performing such duties. Since that work is considered "non-exempt" under the first responder regulation, the limited amount of exempt management duties undertaken by sergeants is insufficient to render their primary duty "management." *See also* DOL *Amicus* Br. at 11-12.

The other reasons cited by the district court for concluding that sergeants' primary duty is "management" are not persuasive. The district court concluded that differences in salary between plaintiffs and subordinate police officers suggested that their primary duty is not general law enforcement, *see Mullins*, 523 F. Supp. 2d at 359; however, the Secretary explains that 29 C.F.R. § 541.3(b) indicates that "regardless of rank or pay level" activities that form part of front-line law enforcement do not constitute "management." *See* DOL *Amicus* Br. at 11. The additional duties performed by sergeants alone are not "management," and, therefore, any difference in pay attributed to those duties cannot be used to satisfy the bona fide executive exemption. The district court's conclusion that plaintiffs are often the only supervisors in the field and thus exercise discretion in the performance of their duties — which is not one of the elements of the current version of the executive exemption, *see* 29 C.F.R. § 541.100(a)[3] — overlooks the fact that such discretion forms part of their performance of law enforcement work in the field. *See* DOL *Amicus* Br. at 10. Plaintiffs do not, however, have discretion to determine when they perform any non-exempt duties, *see* 29 C.F.R. § 541.106(a) ("Generally, exempt

---

[3] The previous version, which the district court applied to the period of April 19, 2001 to August 23, 2004, included discretion among the factors relevant to the primary duty inquiry. *See* 29 C.F.R. § 541.1 (2003) (whether employee "customarily and regularly exercises discretionary powers"). However, discretion formed part of the "long test," which applied only to employees earning less than $250 per week, and thus discretion was not an explicit factor relevant to the inquiry as applied to plaintiffs.

executives make the decision regarding when to perform nonexempt duties . . . ."), since sergeants generally receive their assignments from higher-ranking officers such as lieutenants. *See Mullins*, 523 F. Supp. 2d at 344; *see also* DOL *Amicus* Br. at 12.

Because under the Secretary's interpretation sergeants' primary duty is law enforcement, we need not reach the question of whether the evidence presented at trial was sufficient to establish that the sergeants' "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). Since plaintiffs' primary duty is not management, the City has not met its burden of showing that plaintiffs satisfy the statutory and regulatory requirements for the executive exemption from the FLSA's overtime pay requirements for the period of August 23, 2004 to the present, and plaintiffs are therefore entitled to overtime pay for that time period.

III.    Plaintiffs' Claims for April 19, 2001 to August 23, 2004

Although the Secretary interpreted this Court's questions in the order inviting *amicus* briefing to refer solely to the period postdating August 23, 2004, and therefore did not directly address the period beginning April 19, 2001, *see* DOL *Amicus* Br. at 2 n.2, the Secretary's views nevertheless inform our analysis of the plaintiffs' primary duty under the previous regulation. We therefore also hold that, for this time period, the City has failed to carry its burden of demonstrating that plaintiffs satisfy the bona fide executive exemption from the FLSA's overtime pay requirements.

The DOL indicated in the preamble that the new Part 541 regulations were intended to clarify the existing regulations in effect. 69 Fed. Reg. at 22125. The preamble indicates that the

revisions were "necessary to restore the overtime protections intended by the FLSA which have eroded over the decades," *id.* at 22122, and were designed to

> clarify and better organize the regulations defining and delimiting the exemptions for administrative, executive and professional employees. Rather than broadening the exemptions, the final rule will enhance understanding of the boundaries and demarcations of the exemptions Congress created. The final rule will protect more employees from being misclassified . . . .

*Id.* at 22125. In this regard, we agree with plaintiffs that the DOL intended "simply to clarify the manner in which the exemptions were always meant to be applied to such first responders." Pls. Supp. Br. at 8.

In the preamble, the DOL cited cases in which police officers and other first responders had been held to be non-exempt and indicated that it "ha[d] no intention of departing from this established case law." 69 Fed. Reg. at 22129. The DOL's agreement with the holdings of those prior cases suggests that the interpretation advanced by the Secretary under the current regulation applies with equal force to the previous version of the executive exemption.[4] Plaintiffs point out that 29 C.F.R. § 541.3(b)'s clarification that a police officer "is not exempt merely because [he] directs the work of other employees" is also consistent with prior case law in which plaintiffs had "supervisory duties in addition to their primary duties of field law enforcement." Pls. Supp. Br. at 10. As the Secretary notes, "the sergeants' direction of police officers is done in conjunction with their performance of field law enforcement work. . . . [T]he fact that the sergeants direct police officers while they perform field law enforcement activities

---

[4] In its opinion on summary judgment, the district court also acknowledged that the new regulations were consistent with the previous version. *See Mullins*, 523 F. Supp. 2d at 354. The Secretary likewise notes that 29 C.F.R. § 541.3(b)'s focus on the employee's duties is consistent with the previous regulation. *See* DOL *Amicus* Br. at 9 n.6.

-28-

does not transform the field law enforcement into management." DOL *Amicus* Br. at 9-10. We therefore see no reason to depart from the preceding analysis as applied to plaintiffs' performance of their duties under the previous version of the regulation.

The City nevertheless argues that, under the new regulation, one of the factors listed as pertinent to the primary duty analysis is "relative freedom from supervision, which is virtually synonymous with discretion," and "discretion" therefore remains a relevant factor. Def. Br. at 46 (citing 29 C.F.R. § 541.700(a)). Although the previous regulation explicitly included discretion among the factors relevant to the primary duty inquiry, *see* 29 C.F.R. 541.1(d) (2003) (whether employee "customarily and regularly exercises discretionary powers"), we indicated, *supra* **at [] & n.3**, that this factor formed part of the "long test," not the "short test" applicable to plaintiffs, and furthermore, plaintiffs do not have discretion to determine when they perform non-exempt duties; instead, the majority of plaintiffs' discretion is exercised in the performance of their field law enforcement duties. *See Mullins*, 523 F. Supp. 2d at 358 (noting that "plaintiffs . . . exercise discretion and make significant decisions based on their judgment while in the field"); 29 C.F.R. § 541.106(a). It is also relevant to note that, in reaching the conclusion that sergeants' direction of subordinate police officers was not "management," the Secretary's analysis did not rely on plaintiffs' "relative freedom from supervision."

Assuming, *arguendo*, that we were to equate "discretion" with "relative freedom from supervision," our analysis would not be different. Given that the new regulations were designed to be consistent with the previous ones, it follows that any "discretion" exercised by plaintiffs in their supervision of police officers' field law enforcement duties does not render such supervision "management" for the purposes of the FLSA executive exemption. In light of the

controlling deference we have given to the Secretary's interpretation of the first responder regulation, we do not interpret the previous regulations to indicate that any discretion inherent in sergeants' supervision of police officers while performing law enforcement duties transforms that supervision into "management." Plaintiffs are therefore entitled to the overtime pay protections of the FLSA for their claims covering this time period.

## CONCLUSION

For the reasons stated herein, the district court's judgment is **REVERSED**, and the case is **REMANDED** with instructions to enter judgment in favor of the plaintiffs and for additional proceedings not inconsistent with this opinion.