*Sanchez v. Binghamton City School District*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of August, two thousand twenty-five.

Present:

> JON O. NEWMAN,
> WILLIAM J. NARDINI,
> EUNICE C. LEE,
> *Circuit Judges*.

_____

IVANIS SANCHEZ, JANIS BRISTOL, ISIS MCKINSTRY, ANASIA SANKS,

> *Plaintiffs-Appellants*,

v.                                                                                    24-2125-cv

BINGHAMTON CITY SCHOOL DISTRICT, BINGHAMTON BOARD OF EDUCATION, TIM SIMONDS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, MICHELLE RALEIGH, IN HER INDIVIDUAL AND OFFICIAL CAPACITY, MARY ELLEN EGGLESTON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY,

> *Defendants-Appellees*.

_____

1

For Plaintiffs-Appellants:                          KATRINA FELDKAMP, NAACP Legal Defense and Educational Fund, Inc., New York, NY (Samuel Spital, Rachel Kleinman, Pilar Whitaker, Avatara Smith-Carrington, NAACP Legal Defense and Educational Fund, Inc., New York, NY, and Washington, DC, Jamie A. Levitt, Morrison & Foerster LLP, New York, NY, *on the brief*).

For Defendants-Appellees:                          SHANNON T. O'CONNOR (Jennifer R. Collesano, Alice Cunningham, *on the brief*), Kenney Shelton Liptak Nowak LLP, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiffs-Appellants Ivanis Sanchez, Janis Bristol, Isis McKinstry, and Anasia Sanks appeal from a judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *District Judge*), entered on July 15, 2024, in favor of Defendants-Appellees Binghamton City School District, Binghamton Board of Education, Principal Tim Simonds, Assistant Principal Michelle Raleigh, and School Nurse Mary Ellen Eggleston.  The Plaintiffs brought this action alleging, *inter alia*, that Simonds, Raleigh, and Eggleston violated their rights under the Fourth Amendment to the U.S. Constitution by subjecting them to invasive searches when they were students at East Middle School.  On February 1, 2024, the district court entered an order granting in part the Defendants' request for summary judgment.  As pertinent here, the district court dismissed each of the Plaintiffs' Fourth Amendment claims, except for McKinstry's Fourth Amendment claim against Eggleston.  On July 15, 2024, McKinstry agreed to dismiss that claim with prejudice but preserved her right to appeal the district court's summary judgment ruling

2

as to her other claims. The district court subsequently entered judgment and dismissed the case. On appeal, the Plaintiffs challenge the district court's February 1, 2024, order to the extent it granted summary judgment to the Defendants on the Plaintiffs' Fourth Amendment claims. We assume the parties' familiarity with the case.

"We review *de novo* a district court's grant or denial of summary judgment, viewing the record in the light most favorable to the party against whom summary judgment is sought." *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011).[1] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022).

"Fourth Amendment rights are different in public schools than elsewhere . . . ." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 829–30 (2002). Although the Fourth Amendment's "prohibition on unreasonable searches and seizures applies to searches conducted by public school officials," *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985), the reasonableness inquiry for such searches must account for "the schools' custodial and tutelary responsibility for children," *Earls*, 536 U.S. at 830. As a result, we apply a standard of reasonable suspicion, rather than probable cause, to student searches, *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009), assessing the totality of the circumstances to determine whether the search was "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place," *T.L.O.*, 469 U.S. at 341; *see also Phaneuf v. Fraikin*, 448 F.3d 591, 597 (2d Cir. 2006). "Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341–42. "Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342. Applying these principles, we discern no error in the district court's summary judgment ruling on the Plaintiffs' Fourth Amendment claims.

First, we agree with the district court that no reasonable jury could find that the Defendants lacked sufficient justification to begin searching the Plaintiffs. In making this determination, we consider "only those facts known to the school officials prior to the search[es]." *Phaneuf*, 448 F.3d at 597. The record shows that in the month preceding the searches, the Binghamton City School District had expressed concerns about reports of students ingesting a "purple" juice consisting of "codeine-based prescription cough syrup, soda and candy" that can cause "dizziness, drowsiness, abdominal pain, loss of balance or coordination, slow/slurred speech, constricted pupils, difficulty breathing, blurred vision, nausea, slowed heart rate, and memory problems," as well as seizures, coma, and death. App'x at 783, 785. On the day the Plaintiffs were searched, school officials were unable to locate them for several minutes after they left the cafeteria. As reflected in school video footage, Simonds eventually found the Plaintiffs laughing in a hallway on a different floor, and Raleigh arrived about thirty seconds later. As Simonds approached the Plaintiffs, he could see that Sanchez had fallen on the floor with her legs in the air. Then, during the Plaintiffs' interaction with Simonds and Raleigh, the Plaintiffs were observed acting in an unsettled state: Sanchez and Bristol intermittently leaned against a wall and bobbed their heads, McKinstry persistently swung her arms and touched her pants, and Sanks attempted to enter a

4

stairwell instead of following behind Simonds as instructed. Given this behavior and the school district's general concerns about students experimenting with intoxicating substances such as purple juice, the Defendants' suspicion that the Plaintiffs had ingested an intoxicant "was the sort of common-sense conclusion about human behavior upon which practical people—including government officials—are entitled to rely." *T.L.O.*, 469 U.S. at 346. Thus, regardless of whether other hypotheses might have also been consistent with the Plaintiffs' behavior, it was reasonable for the Defendants to suspect that a search would turn up evidence that the Plaintiffs were violating school rules by possessing and ingesting a prohibited substance.

We likewise agree with the district court that no reasonable jury could find that the challenged searches were excessively intrusive. The searches here occurred in three stages, the first two of which involved each of the Plaintiffs. First, Simonds stopped the Plaintiffs in the hallway and brought them to Eggleston's office, where Eggleston checked their vital signs, vision, balance, motor skills, and neurological functions. The Plaintiffs offer no basis to conclude that this initial stage was not reasonably related to determining whether they had ingested an intoxicating substance. Second, the Defendants patted down the Plaintiffs and directed them to empty their pockets and shoes. Although the Plaintiffs argue that these steps were unwarranted given the normal results of Eggleston's medical examination, Eggleston merely told Raleigh that the students were "okay," that "she could not determine with certainty that they had ingested any substances," and that the Plaintiffs "could stay in school." App'x at 1474. Therefore, the examination did not dissipate the Defendants' suspicion as to the Plaintiffs' conduct, and the searches of their outer clothing were justified for the purpose of determining whether they possessed a prohibited substance. *See Redding*, 557 U.S. at 373–74 (suspicion that student was

5

involved in pill distribution "was enough to justify a search of [the student's] backpack and outer clothing").

The third stage involved what the Plaintiffs assert were improper strip searches of McKinstry and Sanks. But, at the outset, the Plaintiffs do not contend that anyone other than Eggleston was present when McKinstry was allegedly strip searched, and, as discussed, McKinstry agreed to dismiss her Fourth Amendment claim against Eggleston with prejudice. We reject the Plaintiffs' argument that McKinstry's claim should nonetheless survive summary judgment as it pertains to Simonds and Raleigh. Contrary to the Plaintiffs' assertion that a reasonable jury could find that Eggleston strip searched McKinstry at Simonds' direction, the record indicates that Simonds simply told Eggleston "that the girls [had been] missing," and that he "wanted [Eggleston] to ensure [they] were okay." App'x at 1468. And, although the Plaintiffs assert that Raleigh "was present for much of Eggleston's search of [McKinstry]," Appellants' Br. at 51, McKinstry testified that Raleigh entered the room *after* she had put her sweatshirt back on. As for Sanks, we agree with the district court that no reasonable jury could find that Eggleston or any of the other school officials violated her Fourth Amendment rights. Sanks testified that, at Eggleston's direction, she momentarily unzipped her sweatshirt to the area between her chest and belly button but then immediately zipped it back up. Although Sanks was wearing only a bra under her sweatshirt, the Plaintiffs adduced no evidence that the brief action of partially unzipping and quickly re-zipping the sweatshirt resulted in the exposure of her breasts or any other private area to Eggleston.

We do not doubt that this episode, brief as it was, was distressing for Sanks. But where a student is reasonably suspected of possessing contraband, "she is reasonably suspected of carrying

6

[it] on her person," and such suspicion, if "not understood to support searches of outer clothes . . . , would not justify any search worth making." *Redding*, 557 U.S. at 374. Similarly, we are convinced that, under the circumstances of this case, no reasonable jury could conclude that Eggleston's search of Sanks was "excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 342. For these reasons, we conclude that the Plaintiffs have provided no basis to disturb the district court's summary judgment ruling as to their Fourth Amendment claims.

* * *

We have considered the Plaintiffs' remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe,
Clerk of Court

7