**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 14-2308**

---

GERARD MORRISON; CHRISTOPHER THOMPSON; ELTON POLEN, JR.; CALVIN ALEXANDER; MICHAEL ALLEN; ROCCO ALVARO; THOMAS ARNOLD; WILLIAM ATWELL; ROBERT BANASIK; TIMOTHY BARB; TODD BARB; MATHEW ARNHART; MERVIN BARRERA; OSCAR BEASLEY; WILLIAM BEST, JR.; BILL BETZ; DANIEL BORDEN, JR.; EDWARD BOWMAN; FRED BRANDELL; DONALD BRASFIELD; CHRISTOPHER BROWN; JON BRULEY; CLYDE BUCHANAN; CARLTON BURKHAMMER; ROBERT BURLINGAME; MATTHEW BURNS; LEO BURT; LEROY BUTLER, JR.; KEITH CERZULLO; JOHN CHESEK, JR.; MICHAEL CIARROCCHI; STEVEN CLARK; BRADFORD COCHRANE, JR.; THOMAS CONNOLLY; DAVID CONRAD; ARTHUR COX; DUSTIN CRAMER; TRACY CRAWFORD; KEITH CROSS; ERIC CUNNINGHAM; CHARLES CUNNINGHAM; DANNY DANIELS, II; MICHAEL DAVIS; TROY DEAN; YOLANDA DEMARK; SAMUEL DEVERA; KEITH DUBETSKY; BRIAN EDMONSTON; KEVIN EDWARDS; DEREK EDWARDS; FELECIA EDWARDS; SEAN EVANS; MARK FEASTER; MICHAEL FISCHER; COLIN FLANIGAN; THOMAS FLINT; MICHAEL FONTANA; RAMIRO GALVEZ; MICHAEL GARCIA; KENNETH GEFFEN; JARED GOFF; GEORGE GONZALEZ; TODD GORHAM; SAMUEL GRAY; RAYMOND GRIFFIN; WESLEY GRIGG; DAVID GRUENDEL; MARK GUDITUS; DAVID HALL; JAMES HARRISON, III; SHERYL HEMINGWAY; CHARLES HENDERSON; KIT HESSEL; JOHN HIGGINBOTHAM; JAMES HOBGOOD; KIMBERLY HOOD; TRENTON HOUGHTON; GREGORY HUNTER; JAMES IACONE; MICHAEL ISTVAN; JAMES ISTVAN; ANTHONY JACKSON; JAMES JOHNSON; REGINALD JOHNSON; THOMAS JOHNSON; WALTER JOHNSON; JOSEPH KALEDA; GLENN KAPLAN; PATRICK KELLY; REBECCA KELLY; WILLIAM KINGDON; JOSPEH KISER; ROBERT KITCHEN; JOSEPH KNERR; ROBERT KONCZAL; TONY KOSTECKA; RONALD KULEY; DAVID LANGE; JAMES LEE; JOHN LEETE; JEFFREY LEWIS; ROBERT LISON; MATTHEW LOPEZ; WILLIAM LYNCH; BARRY MAHAM; MICHAEL MARKS; CHARLES MARTIN; JAMES MASIELLO; PAUL MASIELLO; GLENN MASON; COREY MATTHEWS; THOMAS MAYHEW; STEVEN MCFARLAND; ROGER MCGEHEE; RICHARD MCKINNEY, JR.; KERWIN MCNAMARA; FRANCIS MENSAH; MARK MENTON; JOSEPH MERRITT, JR.; STEPHEN MILLER; ROBERT MOHLER; JEFFREY MONGOLD; DONALD MONTAGUE; BRIAN MORAVITZ; JOHN MORRIS; RICHARD MOXLEY; JOHN NIEMIEC; BRYAN NIX, JR.; STEVEN NORRIS; STEPHEN O'BRIEN; MILTON PAINTER; JOSPEH PALAU, III; DENNIS PASSMORE; GARY PEMBERTON; JOHN PETERS; DALLAS PHILLIPS; RALPH PISANI; CHARLES PULLEN; E. MARTIN RANCK, III; BARRY RATHBONE; JOHN RICHTER; NATALIE ROBB; RONNIE RODRIGUEZ; MATTHEW RYAN; WILLIAM SCHELLHAMMER, III; MARK SCHROEDER; DAVID SCHWARZMANN;

MICHAEL SEASE, II; DAVID SELLERS; DANIEL SHAW; RICHARD SMITH; SCOTT SMITH; MICHAEL SNAPP; JAMES A. SOBOTA; JAMES STICKLEN; REX STRICKLAND; CHERI STROUP; RONALD SYDNOR; KENDALL THOMPSON; LORENZO THROWER; CHRISTOPHER TILLES; DAVID TOBIN; JEFFREY TOLLE; GLENN TSCHANN; WILLIAM VANNOY; DONALD VAUGHT; JACK WALMER, JR.; JOHN WALSER; THOMAS WEALAND; OSCAR WELLS; WAYNE WENTZEL; MICHAEL WHETSELL; PAUL WHITE; KENNETH WILDMAN; JEROME WILLIAMS; MARCUS WILLIAMS; ELTON WRIGHT; RICHARD LANCING,

           Plaintiffs – Appellants,

     and

GARY DIZE,

           Plaintiff,

     v.

COUNTY OF FAIRFAX, VA,

           Defendant – Appellee.

------------------------

UNITED STATES DEPARTMENT OF LABOR,

           Amicus Curiae.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:14-cv-00005-CMH-JFA)

Argued: January 27, 2016          Decided: June 21, 2016

Before TRAXLER, Chief Judge, and THACKER and HARRIS, Circuit Judges.

Reversed and remanded by published opinion. Judge Harris wrote the opinion, in which Chief Judge Traxler and Judge Thacker joined.

2

**ARGUED:** Molly A. Elkin, WOODLEY & MCGILLIVARY, LLP, Washington, D.C., for Appellants. Sona Rewari, HUNTON & WILLIAMS LLP, McLean, Virginia, for Appellee. Sarah Kay Marcus, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Evangeline C. Paschal, HUNTON & WILLIAMS LLP, Washington, D.C., for Appellee. M. Patricia Smith, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.

---

PAMELA HARRIS, Circuit Judge:

Under the Fair Labor Standards Act ("FLSA"), employees who work overtime generally are entitled to overtime pay. There is an exception — like all FLSA exceptions, narrowly construed — for certain "executive" and "administrative" employees whose primary job duties are management-related. The question in this case is whether the fire captains of Fairfax County, Virginia, firefighters who serve as first responders to fires and other emergencies, fall within that exception so that they are not entitled to overtime compensation.

The district court held that all of the current and former Fairfax County fire captains bringing this suit are exempt executives, and entered summary judgment for Fairfax County. On appeal, the County takes a different approach, arguing that some of the Captains are exempt executives while others are exempt administrators. We conclude that on this record, no reasonable jury could find by the requisite clear and convincing evidence that any of the Captains is exempt from the FLSA's overtime requirement. Accordingly, we reverse the district court's judgment and remand with instructions to enter summary judgment for the Captains.

4

## I.

## A.

We begin by setting out the statutory and regulatory scheme that governs this case. The Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219, is "remedial and humanitarian in purpose" reflecting an intent by Congress to protect broadly the "rights of those who toil." Tennessee Coal, Iron & R.R. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944); Purdham v. Fairfax Cty. Sch. Bd., 637 F.3d 421, 427 (4th Cir. 2011). Consistent with that purpose, courts are to construe the FLSA liberally, "recognizing that broad coverage is essential" to accomplish the statute's goals. Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985); see Purdham, 637 F.3d at 427 ("[T]he Supreme Court has cautioned that the FLSA 'must not be interpreted or applied in a narrow, grudging manner.'" (quoting Tennessee Coal, 321 U.S. at 597)).

Among the protections the FLSA provides employees is overtime pay, or the right to be paid at time and a half for work above the statutory limit, generally 40 hours per week. See 29 U.S.C. § 207. There are, however, exemptions from this requirement, including the so-called "white collar" exemption for workers "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). As we have recognized, FLSA exemptions, including this one, "are to be

5

'narrowly construed against the employers seeking to assert them,'" and applied only in instances "plainly and unmistakably within the exemptions' terms and spirit." Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 692 (4th Cir. 2009) (alterations omitted) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).

The Department of Labor ("DOL") has promulgated regulations interpreting the FLSA's exemptions for executive and administrative employees, the two categories at issue in this case. Under the DOL regulations, an "employee employed in a bona fide executive capacity" is one who earns at least $455 per week, has authority over hiring and firing,[1] routinely supervises at least two other employees,[2] and — most relevant here — whose "primary duty is management of the enterprise in which the employee is employed." 29 C.F.R. § 541.100. The administrative exemption similarly turns on a management-related primary duty: An "employee employed in a bona fide administrative capacity" is one who, in addition to earning at least $455 per week and

---

[1] "Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4).

[2] "Who customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.100(a)(3).

exercising discretion on significant matters,[3] has as a "primary duty" the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." Id. § 541.200.

In 2004, DOL proposed changes to its "Part 541" regulations governing the white collar exemptions, generating concerns that first responders and manual laborers would become exempt employees and lose their right to overtime pay. See U.S. Dep't of Labor, Wage & Hour Div., Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,129 (Apr. 23, 2004) (the "Preamble"). In response, DOL promulgated a new regulation, 29 C.F.R. § 541.3, clarifying the scope of the exemptions as applied to blue collar workers and first responders. Preamble at 22,128–29.

Subsection (a) of the new regulation provides that the Part 541 exemptions "do not apply to manual laborers or other 'blue collar' workers who perform work involving repetitive operations with their hands, physical skill and energy." 29 C.F.R. § 541.3(a). Subsection (b) is the "first responder regulation," with potential bearing on this case. Subsection (b) provides in

---

[3] "Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).

7

its first part that the Part 541 exemptions "do not apply to . . . fire fighters" and other first responders, "regardless of rank or pay level." Id. § 541.3(b)(1). In its second and third parts, the regulation explains why: "Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise . . . as required under § 541.100," id. § 541.3(b)(2); and "[s]uch employees do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer . . . as required under § 541.200," id. § 541.3(b)(3).

**B.**

The Fairfax County Fire and Rescue Department is organized in a straightforward hierarchy. At the top is the Fire Chief, in charge of the entire Department. Reporting directly to the Fire Chief are three Assistant Fire Chiefs; beneath them on the organizational chart are nine Deputy Fire Chiefs, followed by Battalion Chiefs. Five ranks down from the top are the Captain positions at issue in this suit, reporting directly to the Battalion Chiefs. The County treats all of these positions as exempt from overtime pay requirements under the FLSA.

Directly below the Captains on the organizational chart are the Department's Lieutenants, followed by firefighters and technicians. All positions below the Captain position —

8

Lieutenants, firefighters, and technicians — are treated by the County as non-exempt under the FLSA and thus entitled to overtime compensation.

Although the parties disagree about the fundamental character of the Captains' jobs, the record reveals certain undisputed facts about the Captains' specific responsibilities and work activities. The Department divides its Captains into two groups. The "Captain I" group includes Shift Commanders and Safety Officers, and the "Captain II" group includes Station Commanders and Emergency Medical Service Supervisors ("EMS Supervisors"). For every 24-hour shift, a Station Commander or Shift Commander is responsible for supervising each fire station; an EMS Supervisor is responsible for the emergency medical services for each "battalion," or geographic region; and a Safety Officer is assigned to one or two stations, providing advice on any safety issues that arise and serving as the Department's primary contact concerning these issues.

Station and Shift Commanders are what are commonly known as "first responders." They report to every emergency call that comes in during their shifts and is assigned to their engines: A fire engine cannot leave the station without its designated Station or Shift Commander on board, and these Captains may not refuse to respond to a call. At the scene, Station and Shift Commanders work side-by-side with their subordinates, wearing

9

the same protective gear.  With their crews, they operate hoses and ladders, ventilate buildings, and force entry, running into burning buildings to rescue victims or search for signs that a fire will spread.  Station and Shift Commanders spend the same amount of time responding to emergencies as their lower-ranked colleagues assigned to their engines.

EMS Supervisors and Safety Officers also are part of the first-response team; like Station and Shift Commanders, they have no discretion as to whether they will respond to calls. EMS Supervisors transport emergency medical equipment to the scene of emergencies and render emergency care, such as controlling bleeding and performing CPR.  They also conduct more technical Advanced Life Support ("ALS") at the scene of fires, initiating intravenous drips, checking EKG rhythms, and the like.  Safety Officers transport emergency equipment that allows them to monitor the safety of fire scenes, including measuring gas levels and analyzing the structural integrity of buildings that they and their colleagues will need to enter.

As is to be expected, the Captains spend only a small portion of their time actually fighting fires.  Most of their time is spent at the station, and of that time, the single biggest block goes to daily training for their first-response duties.  Like all first responders, the Captains are required to participate in emergency response training, which takes an

10

average of approximately two hours per shift. Held to the same physical fitness standards as other firefighters, the Captains also must undergo daily physical fitness training with their crews to ensure that they are physically able to perform their first-response functions. That physical fitness training consumes an additional two hours or so each day.

While at the station, the Captains also spend time — though significantly less — on tasks that are distinct from their front-line responsibilities. First, the Station and Shift Commanders complete annual evaluation reports of the firefighters in their crews. According to the Captains' unrebutted deposition testimony, each Commander spends a maximum of twelve hours per year on this task. EMS Supervisors spend less; they are responsible only for evaluation addendums for ALS-certified personnel, assessing ALS abilities exclusively, which takes approximately four hours per year. Safety Officers have no responsibility for evaluations.

The Captains have no authority to administer discipline without the approval of a Battalion or Deputy Chief. But the Station and Shift Commanders are required to report disciplinary infractions up the chain of command and then to administer the discipline decided upon by the higher-ranking officers, tasks which take no more than three hours per year. The EMS Supervisors and Safety Officers have less involvement in

11

discipline.  EMS Supervisors occasionally take part in inquiries into medical issues and are infrequently ordered to issue discipline.  Safety Officers occasionally participate in accident review boards but do not decide the appropriate outcome.

Similarly, while the Captains do not write or disseminate station policies, Station Commanders are responsible for updating station policies on an annual basis so that they conform to updates in County-wide policies.  That task takes less than five hours per year.  Finally, Station Commanders and EMS Supervisors create "wish lists" of supplies for their stations, accounting for fewer than four hours per year.  The Captains do not set or control the budget, hire or fire employees, set minimum staffing levels, change employees' work schedules, or approve overtime.[4]

---

[4] Our focus is on the factual record as it pertains to the specific tasks performed by the Captains, rather than general descriptions of their jobs.  That is because "the determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions."  Ale v. Tenn. Valley Auth., 269 F.3d 680, 689 (6th Cir. 2001) (holding employees non-exempt under executive and administrative exemptions).  Here, the County's primary source of evidence is its own job descriptions of the Captain positions, as well as descriptions from some of the Captains' resumes.  In this posture, and given record testimony supporting the accuracy of the County-prepared materials, we assume these job descriptions are true.  But they are framed at a high level of generality, and thus do not add appreciably to or call into question the more specific evidentiary submissions of the

12

## c.

In January 2014, over a hundred current and former Captains brought suit against the County for the denial of overtime pay. After discovery, the parties cross-moved for summary judgment. The County took the position that the Captains are exempt from the FLSA's overtime pay requirements, under the executive exemption with respect to Station and Shift Commanders and under the administrative exemption with respect to EMS Supervisors and Safety Officers. The Captains argued that the undisputed evidence showed that they do not fall within those exemptions, particularly in light of the first responder regulation.

---

parties. For instance, the class specification for Station Commanders tells us that these Captains "[p]repare[] the budget for the fire and rescue station." J.A. 1985. But the parties do not dispute that what that means in practice — at the level of day-to-day job tasks on which the exemption inquiry turns — is that the Captains prepare "wish lists," or make funding requests that must be approved by their supervisors. It is those more specific duties that we recount above, and on which any finding of exemption must rest. See Vela v. City of Houston, 276 F.3d 659, 677 (5th Cir. 2001) (city job descriptions too general to support a finding that employees' specific job duties qualify as exempt under executive or administrative exemptions); Ale, 269 F.3d at 688–89 (employer job descriptions and employee resumes too general and vague to support a finding that "what [the] employee actually does on a day-to-day basis" is exempt under executive or administrative exemptions).

13

The district court awarded summary judgment to the County, holding that all of the Captains are exempt executives. The court relied on a series of Fourth Circuit decisions finding that fire shift commanders, engine captains, and EMS captains in counties other than Fairfax are exempt executives under the FLSA. Morrison v. Cty. of Fairfax, Civ. No. 1:14-cv-005, 2014 WL 5591073, at *3 (E.D. Va. Nov. 3, 2014) (citing Hartman v. Arlington Cty., 903 F.2d 290 (4th Cir. 1990); Int'l Ass'n of Fire Fighters v. City of Alexandria, 912 F.2d 463 (4th Cir. 1990); West v. Anne Arundel Cty., 137 F.3d 752 (4th Cir. 1998)). Given those cases, the district court concluded, "the exempt status of fire captains and EMS captains in the Fourth Circuit is well-established." Id.

Nor, the district court held, did the first responder regulation, promulgated after those cases were decided, affect the analysis. According to the district court, the first responder regulation, like its companion provision in 29 C.F.R. § 541.3, addresses only "blue collar" employees. "Read in context," the court explained, "the First Responder Regulation ensures the Executive Exemption does not apply to 'blue collar' firefighters, regardless of rank or pay," and has no import for non-blue collar employees like the Captains. Id. at *3-4. The Captains timely appealed.

14

Summary judgment is appropriate if no reasonable jury could find for the nonmoving party. Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993). We review the district court's grant of summary judgment de novo. Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 434 (4th Cir. 2011). In doing so, we are mindful that the FLSA exemptions are to be "narrowly construed against the employer[]," and that the employer must prove an exemption's applicability by clear and convincing evidence. Desmond, 564 F.3d at 691 & n.3, 692. On this record, we conclude that no reasonable jury could find by clear and convincing evidence that the Captains are exempt from the FLSA's overtime mandate.

**A.**

We begin our analysis with the first responder regulation, which speaks directly to the exempt status of firefighters and other first responders under the FLSA.

29 C.F.R. § 541.3 states, in relevant part:

(a) The [Part 541] exemptions and the regulations in this part do not apply to manual laborers or other "blue collar" workers who perform work involving repetitive operations with their hands, physical skill and energy. . . .

(b)(1) The [Part 541] exemptions and the regulations in this part also do not apply to police officers, . . . fire fighters, . . . and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or

15

extinguishing fires of any type; rescuing fire, crime or accident victims; . . . or other similar work.

(2) Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under [the executive exemption] merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire.

(3) Such employees do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer or the employer's customers as required under § 541.200.

The County does not dispute that the Captains in this case qualify under the first paragraph of § 541.3(b) as "fire fighters" who "perform work such as preventing, controlling or extinguishing fires." See 29 C.F.R. § 541.3(b)(1). The district court nevertheless held the regulation inapplicable to the Captains, on the ground that it addresses only "blue collar" firefighters. The Secretary of Labor, joined by the Captains, disagrees,[5] and the County does not defend the district court's decision in this regard.

_____

[5] At our request, the Secretary of Labor appeared as amicus in this case. The Secretary also submitted a letter amicus brief addressing the scope of the first responder regulation in the Second Circuit case of Mullins v. City of New York, 653 F.3d 104 (2011).

16

Like the Secretary and the Captains, we believe the district court erred in conflating the first subsection of the regulation, addressing "blue collar" and manual laborers, with the second, covering first responders. Although the blue collar provision immediately precedes the first responder regulation, there is no basis for treating the two as overlapping; the separate subsections are clearly delineated, with the first providing that the exemptions in question do not apply to blue collar employees, and the second that the exemptions "also do not apply" to first responders. Id. § 541.3(b)(1) (emphasis added). The Preamble to the regulation confirms this reading, analyzing the two subsections separately and making clear that they respond to distinct concerns. See Preamble at 22,128–29. Whether the Captains could be considered "blue collar" employees under § 541.3(a), in other words, is immaterial to their status as first responders under § 541.3(b).

Thus, the first responder regulation applies to this case, and provides in subsection (b)(1) that the executive and administrative exemptions at issue "do not apply" to the listed firefighters — a group that concededly includes the Captains — "regardless of rank or pay level." 29 C.F.R. § 541.3(b)(1). That is "because," the regulation goes on to say, such firefighters' "primary duty is not management," as required for the executive exemption, id. § 541.3(b)(2), or "the performance

17

of work directly related to the management" of the Department, as required for the administrative exemption, id. § 541.3(b)(3).

This regulatory language might naturally be read as establishing a bright-line rule that firefighters and other first responders covered by § 541.3(b)(1) are non-exempt and thus entitled to overtime compensation. But that is not a position advanced by either party to this case, nor by the Secretary. Instead, the parties agree with the Secretary that under the first responder regulation, as before, whether firefighters are exempt executives or administrators is governed by the "primary duty" standard, under which the Captains are exempt if (and only if) their primary duty is "management," id. § 541.100, or administrative work "directly related to . . . management," id. § 541.200.

To defend that reading, the Secretary points to language in the regulation referencing the primary duty standard. By explaining that first responders are not exempt "because their primary duty is not management" or "the performance of work directly related to . . . management," both subsections (b)(2) and (b)(3), the Secretary argues, demonstrate that subsection (b)(1)'s rule remains "grounded in first responders' primary duty." DOL Br. at 23. Similarly, the example provided in subsection (b)(2) — a "fire fighter whose primary duty is to . . . fight fires is not exempt . . . merely because" he or

18

she also supervises other employees — makes clear that the scope of subsection (b)(1) is limited to firefighters whose primary duty is not management or management-related.

The Secretary, joined by the County, also directs us to the Preamble to the first responder regulation, which clarifies that the purpose of the regulation is not to "depart[] from . . . established case law" applying the primary duty test to hold that first responders — including fire department captains — are not exempt executives or administrators. Preamble at 22,129 (describing, inter alia, Dep't of Labor v. City of Sapulpa, 30 F.3d 1285 (10th Cir. 1994) (fire department captains not exempt executives)). The Preamble also endorses cases holding that certain "high-level police and fire officials" are exempt because "their primary duty is performing managerial tasks," noting as an "important fact" that "exempt police and fire executives generally are not dispatched to calls, but rather have discretion to determine whether and where their assistance is needed." Id. at 22,130. The upshot, the Secretary argues, is that the Preamble confirms that the first responder regulation does not supplant the primary duty test in determining whether a particular first responder is exempt.

Like the Second Circuit in Mullins v. City of New York, 653 F.3d 104 (2011), we will defer to the Secretary's interpretation of his agency's regulation. Id. at 113–17. In Mullins, finding

19

police sergeants non-exempt under the FLSA, the court carefully considered the meaning of the first responder regulation, and concluded that the Secretary's interpretation "is not plainly erroneous or inconsistent with [the] regulations," and warrants deference under Auer v. Robbins, 519 U.S. 452 (1997). Mullins, 653 F.3d at 114. We agree. Though the regulation might be subject to a broader reading, the interpretation proposed by the Secretary (and uncontested by the parties) is not foreclosed by unambiguous regulatory text. Nor is there anything to suggest that it "does not reflect the agency's fair and considered judgment," Auer, 519 U.S. at 462; see Mullins, 653 F.3d at 114; indeed, it is entirely consistent with the interpretation offered by the Secretary in the Mullins litigation.

Importantly, reading the first responder regulation to incorporate the well-established primary duty test does not render the regulation meaningless. Rather, as the Secretary urges, the regulation clarifies the application of the primary duty test to first responders like the Captains, primarily through the example offered in subsection (b)(2): "Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not [an exempt executive] merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire." 29 C.F.R. § 541.3(b)(2). As

the court explained in Mullins, that example can be read only as a single illustration of a broader principle, establishing that management-like tasks undertaken in conjunction with, or directly related to, primary first responder duties do not turn a first responder into an exempt executive or administrator. Mullins, 653 F.3d at 115 (adopting Secretary's interpretation); see also id. at 117–18 (tasks that "relate to" or are "undertaken . . . in the course of performing" first responder duties are non-exempt under first responder regulation); Barrows v. City of Chattanooga, 944 F. Supp. 2d 596, 603 (E.D. Tenn. 2013) (relying on Mullins and holding that "management and supervisory activities performed by the categories of employees listed in § 541.3(b) . . . undertaken as a part of the employees' primary field law enforcement duties" are non-exempt).[6]

---

[6] On this point, it appears that the County takes a different view, suggesting that § 541.3(b)(2) is limited to its express terms and clarifies only that a firefighter does not become exempt by virtue of supervising other employees at the scene of a fire. But the prefatory language — "[t]hus, for example" — makes plain that what follows is but one example of a larger principle, Mullins, 653 F.3d at 115, and that general principle is not confined to tasks undertaken "in the field," id. If, on the other hand, § 541.3(b)(2)'s single example were understood to be the sum total of the regulation's contribution to the law, then the regulation would be rendered toothless: The executive exemption already requires both that an employee supervise other workers and that the employee's primary duty be management, see 29 C.F.R. § 541.100, so even without § 541.3(b),

**B.**

We must now determine whether there is evidence in the record from which a reasonable jury could find that the County has met its burden of showing, by clear and convincing evidence, that the Captains are covered by the Part 541 exemptions, construed narrowly and against the employer. See Desmond, 564 F.3d at 691 & n.3, 692 (FLSA exemptions are narrowly construed, and employer must show their application by clear and convincing evidence). That is a substantial burden, and the County cannot meet it here. Accordingly, the Captains are entitled to summary judgment.

The district court came to a different conclusion, awarding summary judgment to the County and holding that all of the Captains are exempt executives — even the EMS Supervisors and Safety Officers as to whom the County had argued only the administrative exemption. The court based its holding on precedent from our court, pre-dating the 2004 first responder regulation, finding that certain fire captains were exempt executives. See Morrison, 2014 WL 5591073, at *3 (citing Hartman, 903 F.2d 290; Int'l Ass'n of Fire Fighters, 912 F.2d 463; and West, 137 F.3d 752). That reliance was misplaced.

---

supervision at the scene of a fire would not suffice to meet the primary duty test.

22

First, because those cases were decided before the first responder regulation was promulgated, they do not reflect the clarification of the primary duty standard provided by that regulation. And more fundamentally, the applicability of the exemptions must be determined based on the individualized facts and record in each case, not on whether first responders in one jurisdiction happen to share a title with exempt first responders in another, who may have entirely different responsibilities and primary duties. On this point, DOL's regulations are very clear, providing that "[a] job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2; see also Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 453 (4th Cir. 2004) (to determine an employee's exempt status, "courts must focus on the actual activities of the employee"); Vela v. City of Houston, 276 F.3d 659, 677 (5th Cir. 2001) ("The title of 'captain' provides no guidance on whether [an] exemption applies; rather, a fact-sensitive inquiry is required." (internal quotation marks and alteration omitted)). And indeed, the cases cited by the district court are careful to focus on the particular duties of the employees involved, as opposed to the employees' titles. See Hartman v. Arlington Cty., 720 F. Supp. 1227, 1229 (E.D. Va. 1989), aff'd, 903 F.2d 290 (4th Cir. 1990); Int'l Ass'n of Fire Fighters, 720 F. Supp. 1230, 1233 (E.D. Va. 1989), aff'd, 912 F.2d 463 (4th Cir. 1990);

23

*West*, 137 F.3d at 763. The district court's conclusion that "the exempt status of fire captains and EMS captains in the Fourth Circuit is well-established" — and its reliance on this conclusion to determine that all of the Captains were exempt executives — was thus unfounded.

We must instead consider the particular record in this case, and the showing the County has made, against the regulatory standards for the executive and administrative exemptions on which the County relies.[7]  As noted above, application of either exemption requires that an employee's "primary duty" be management or management-related.  For the County to prove that the Shift and Station Commanders are exempt executives, it must show by clear and convincing evidence that their primary duty is "management of the enterprise in which [they are] employed or of a customarily recognized department or subdivision thereof."  29 C.F.R. § 541.100(a)(2).  And to prove that the EMS Supervisors and Safety Officers are exempt administrators, it must show by clear and convincing evidence that their primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer."  Id. § 541.200(a)(2).

---

[7] The County does not defend the district court's holding that EMS Supervisors and Safety Officers are exempt executives, and instead reasserts the administrative exemption.

24

Finally, under the first responder regulation, tasks performed as part of or in furtherance of the Captains' first response duties are not deemed "management" and will not render the Captains exempt from overtime pay requirements. Id. § 541.3(b)(2); see Mullins, 653 F.3d at 116; Barrows, 944 F. Supp. 2d at 604.

An employee's "primary duty" is "the principal, main, major or most important duty that the employee performs," "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). DOL has listed four non-exhaustive factors to consider in determining the primary duty of an employee: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) "the amount of time spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." Id.

Applying those factors, and taking full account of the "character of the employee[s'] job as a whole," no reasonable jury could find, by clear and convincing evidence, that the Captains' primary job duty is anything other than emergency response. The first factor, the relative importance of exempt duties, decidedly falls in the Captains' favor. Whatever the

precise importance of the Captains' non-firefighting duties — the evaluations, the disciplinary reports, the annual conforming changes to station policies — it is clear that fighting fires is the more important part of the job. When an emergency call comes in, it takes priority, and the Captains do not have discretion to decline to respond. And unlike their superiors, Captains are part of the core group of firefighters who are required to respond to a typical call; an engine cannot leave the station without its Captain on board. See Barrows, 944 F. Supp. 2d at 604-05 (first response is fire captain's primary duty where he and subordinates are charged with "interrupting whatever other task or activity they may have been involved in to respond to a fire or emergency call"). In this way, the Captains are quite unlike the "high-level" fire officials contemplated as exempt by the Preamble, with the "discretion to determine whether and where their assistance is needed." Preamble at 22,130. The Captains' deposition testimony confirms that their most important duty is first response, and "making sure that [they and the rest of the crew] are ready to go when the . . . 911 call comes in." J.A. 964-65. And although it deposed numerous Fire Department employees, the County points to no testimony or other concrete evidence — and we have found none — specifically disputing that assessment and identifying some other job duty as more important than first response.

26

Instead, the County relies most heavily on the second factor — the amount of time spent on exempt managerial work. The County repeatedly emphasizes that the Captains spend very little of their work time actually responding to emergency calls; it follows, the County argues, that first response cannot be the Captains' primary duty. And the district court seems to have agreed, stressing that "[a]lthough [the Captains] participate in emergency response, the bulk of their time" is spent at the station. Morrison, 2014 WL 5591073, at *1. We think this analysis misapprehends both the nature of the "time" factor and the nature of firefighting.

First, as the Barrows court explained, that a fire captain's direct firefighting duties do not consume the majority of his or her time is simply the nature of first response work: "[T]he nature of the job of every front-line fire fighter[] is generally to wait. Any given day for a fire fighter may consist of extended periods of boredom, punctuated by periods of urgency and moments of terror." Barrows, 944 F. Supp. 2d at 604–05. And it would be illogical to give much weight to how much time a Captain devotes to answering emergency calls; that time presumably would vary from year to year, based on how many emergencies arise, without changing the "character of the employee's job as a whole," 29 C.F.R. § 541.700.

27

Second, the regulation directs attention not to the amount of time spent performing non-exempt work like fighting fires, but specifically to "the amount of time spent performing exempt work." Id. § 541.700(a) (emphasis added). And it will not do simply to assume, as the County seems to on occasion, that the two are inversely correlated — that any time a Captain is not on the scene of a fire, he or she is engaged in an exempt managerial task. On the contrary, some of the things firefighters do at the station while awaiting emergency calls, like sleeping and eating, are decidedly non-managerial. The burden is on the County to come forward with evidence that the Captains spend some significant portion of their time at the station — the regulations suggest that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," id. § 541.700(b) — on managerial or management-related tasks.

But the County has produced no evidence of how much time the Captains spend performing exempt management work, and the evidence that the Captains have produced suggests that it is very little. The Captains' unrebutted deposition testimony shows that they work approximately 2600 hours per year, but spend less than 25 of those hours on identified management tasks: twelve hours completing annual evaluations, three hours reporting disciplinary infractions and administering discipline

28

decided upon by their superiors, five hours updating station policies to conform to county-wide changes, and four hours creating station "wish lists" for purchases.

Nor can the gap be filled with the approximately four hours per day the Captains devote to a combination of emergency response and physical fitness training. The Captains undergo the same training as all of the other firefighters at the station so that they, along with their crews, are able to fulfill their first responder obligations. That so much time is devoted to this process only underscores the importance of those direct response duties. And like other efforts to "assur[e] a constant state of preparedness," such training "relate[s] directly to [a fire captain's] regular front line firefighting duties," and is therefore non-managerial and non-exempt under the first responder regulation. Barrows, 944 F. Supp. 2d at 604 (citing Mullins and finding fire captains non-exempt under first responder regulation and primary duty standard).

To the extent the County argues that the Captains have a role in supervising training that qualifies as managerial, we disagree. Supervision and management are two different things under the executive exemption regulation, which requires both before an employee may be categorized as exempt. See 29 C.F.R. § 541.100(a)(2)-(3). And even read narrowly, the example provided in subsection (b)(2) of the first responder regulation

29

precludes us from classifying as "management" the supervision of employees in the course of activities directly related to first response duties. See id. § 541.3(b)(2).[8]

The remaining two factors, supervision and salary, are similarly unavailing for the County. As to the Captains' "relative freedom from direct supervision," id. § 541.700, it is undisputed that the Battalion Chiefs to whom the Captains report are physically present at the station for some portion of many shifts and, when they are not, "have daily telephone or email contact" with the Captains. J.A. 2518. The Captains also presented evidence that their role is to carry out the orders of their superiors: One Captain testified, for instance, that "[a]ny good captain will tell you he doesn't have an opinion

---

[8] For this reason, as well, references to management-type duties in County job descriptions or on Captain resumes are not enough to show that the Captains' duties qualify as "management" under the executive exemption and first responder regulations. It may be, for instance, that certain Captains, as per the County's class specifications, have responsibility for "station management," with duties that include "direct[ing] the overall activities" of the station. J.A. 1984. But to the extent such management or direction takes the form of supervision, particularly supervision related to first response — "apportioning work" among subordinates, "determining the techniques and personnel to be used" in connection with first response, "reallocating [subordinates'] activities," and the like — it is not exempt "management" activity under the regulatory framework here. Mullins, 653 F.3d at 118. And non-supervisory duties that relate to ensuring operational readiness for first response also are non-exempt under the relevant regulations, even if they might be described colloquially as "management." Barrows, 944 F. Supp. 2d at 604.

30

about anything. He has whatever opinion the fire chief tells him it is." J.A. 194. The EMS Supervisors were described as "aide[s] to the battalion chief," J.A. 662, indicating something other than freedom from supervision. On the whole, this evidence — which the County does not dispute — cannot be said to show clearly and convincingly that the Captains are relatively free from supervision and therefore exempt executives or administrators.

As to the "relationship between the [Captains'] salary and the wages paid to other employees" for the same firefighting work, 29 C.F.R. § 541.700(a), the County has not presented evidence of a significant gap in pay. To be sure, the Captains are assigned a higher pay grade than the non-exempt Lieutenants just below them in rank. But the high end of the range for the Lieutenants' pay grade is higher than the low end of the range for the Captains' pay grade. Moreover, because they are considered non-exempt, Lieutenants make significantly more money than Captains in overtime; multiple Captains testified that they waited to ask for promotions because being promoted would lower their total take-home pay.

Finally, we are mindful that the "primary duty" analysis is a holistic one, "based on all the facts in a particular case," and with the "major emphasis on the character of the employee's job as a whole." Id. And when we step back to employ that

31

broader lens, it confirms what the factor-by-factor analysis tells us: On the record evidence, these Captains are firefighters, not managers or administrators.

On the one hand, the County has produced no evidence showing that the Captains perform the kind of specific high-level management tasks ordinarily associated with executives or administrators: planning and controlling a budget, selecting new employees, setting rates of pay and hours of work, and the like.[9] Instead, the specific duties performed by Captains that are distinct from first response and claimed as "management" by the County — like submitting annual evaluations, reporting infractions, and making conforming changes to station policies — are largely "ministerial in nature." Barrows, 944 F. Supp. 2d at 604 (fire captains non-exempt where purported managerial tasks are "ministerial" and take up small percentage of captains' time). It may be appropriate to think of a fire official responsible for "high-level direction of operations" rather than "front-line firefighting" as a manager first and a firefighter second, see Mullins, 653 F.3d at 115 (quoting

_____

[9] Budgeting authority, interviewing and selecting employees, and establishing hours of work and rates of pay all are included in a DOL regulation enumerating activities that may constitute "management" for purposes of the executive exemption. See 29 C.F.R. § 541.102.

32

Secretary's explanation of first responder regulation), but that description does not fit these Captains.

Front-line firefighting, on the other hand, is at the center of the Captains' jobs. "Simply put, [the Captains are] tasked with the responsibility of interrupting whatever other task or activity they may have been involved in to respond to a fire or emergency call." Barrows, 944 F. Supp. 2d at 605. Like their subordinates, with whom they work side-by-side at the scene of a fire, the Captains are part of the minimum staffing complement for emergency calls. And when they are not responding to a call, the undisputed evidence shows, then they are mostly likely to be spending their time preparing to respond or waiting to respond. "Primary duty" has a common-sense meaning under the Part 541 regulations — "the principal, main, major or most important duty that the employee performs," see 29 C.F.R. § 541.700(a) — and on this record, the County simply cannot show that fighting fires, rescuing victims and administering emergency aid is not the principal and most important job of the Captains. See Barrows, 944 F. Supp. 2d at 605 ("[A]lthough [the captain's] firefighting duties may not have been his most time-consuming, they were clearly the most important duties that he performed."); see generally Dalheim v. KDFW-TV, 918 F.2d 1220, 1227 (5th Cir. 1990) ("[T]he employee's

33

primary duty will usually be what she does that is of principal value to the employer.").[10]

There is no doubt that application of the executive and administrative exemptions calls for a fact-intensive inquiry. See Vela, 276 F.3d at 677; see also Walton, 370 F.3d at 453 (application of FLSA exemptions turns on employees' particular duties, and how employees actually spend their time is question of fact). But where the record evidence will not allow an employer to meet its heavy burden of showing, by clear and convincing evidence, that an exemption applies, then summary judgment is appropriate. See Mullins, 653 F.3d at 119 (reversing award of summary judgment to city and directing entry of summary judgment to first responders because city failed to meet burden of showing that management is first responders' primary duty); Vela, 276 F.3d at 677 (reversing award of summary judgment to city and directing entry of judgment for first responders where record evidence "d[id] not satisfy the City's burden of proving" application of executive or administrative exemptions); see also Walton, 370 F.3d at 453 (affirming award

_____

[10] For the reasons already given, we think that the County's own job descriptions are framed at a sufficiently high level of generality that they shed little light on the issue before us. We do note, however, that to the extent those materials expressly address the "primary duty" question, it is to clarify that although an EMS Supervisor "plays a vital role in battalion planning and management," his or her "primary responsibility revolves around EMS activity." J.A. 3148.

of summary judgment to employer where uncontested facts established application of different FLSA exemption). On the record here, no reasonable jury could find that the County has shown by clear and convincing evidence that the Captains' "primary duty" is management or management-related. The Captains therefore are entitled to judgment as a matter of law.[11]

## III.

The County has not submitted evidence that would allow a reasonable jury to find, under the clear and convincing standard, that the Captains' primary duty is anything other than first response. It follows that the Captains are not exempt

---

[11] Given our conclusion that the County has not met its burden under the "primary duty" standard, the County cannot succeed on its alternative argument that the Captains are exempt under what is known as the "highly compensated employee" exemption to the FLSA's overtime pay mandate. Under that exemption, an employee who earns at least $100,000 per year "will qualify for exemption if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. § 541.601(c). So, for example, the executive exemption may apply to a highly compensated employee if the employee meets the supervision requirement by regularly directing the work of two or more other employees, "even though the employee does not meet all of the other requirements for the executive exemption." Id. But, importantly, the highly compensated employee exemption "applies only to employees whose primary duty includes performing office or non-manual work." Id. § 541.601(a). Because the County has not shown that the Captains' primary duty is anything other than firefighting and emergency aid, the County also cannot show that the Captains fall within the highly compensated employee exemption.

executives or administrators, and are instead entitled to overtime compensation under the FLSA. Accordingly, we reverse the district court's judgment and remand with instructions to enter summary judgment for the Captains on the County's liability under the FLSA. The district court has not ruled on the Captains' request for liquidated damages, and we express no opinion on damages or any other issue.

<u>REVERSED AND REMANDED</u>