24-10-cv (L)
*EMA Financial, LLC v. Vystar Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of July, two thousand twenty-five.

Present:

> WILLIAM J. NARDINI,
> EUNICE C. LEE,
> SARAH A. L. MERRIAM,
> *Circuit Judges*.

_____

EMA FINANCIAL, LLC,

> *Plaintiff-Counter-Defendant-*
> *Appellant-Cross-Appellee*,

> v.                                                          24-10-cv (Lead),
>                                                              24-1647-cv (XAP)

VYSTAR CORP.,

> *Defendant-Counter-Claimant-*
> *Appellee-Cross-Appellant*.*

_____

| | |
|---|---|
| For Plaintiff-Counter-Defendant-Appellant-Cross-Appellee: | Jeffrey Fleischmann, Fleischmann PLLC, New York, NY |
| For Defendant-Counter-Claimant-Appellee-Cross-Appellant: | Barry Bordetsky, Law Offices of Barry M. Bordetsky, Morristown, NJ |

---

* The Clerk of Court is respectfully directed to amend the case caption as indicated above.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Gabriel W. Gorenstein, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Counter-Defendant-Appellant-Cross-Appellee EMA Financial, LLC ("EMA") and Defendant-Counter-Claimant-Appellee-Cross-Appellant Vystar Corp. ("Vystar") appeal from a judgment of the United States District Court for the Southern District of New York (Gabriel W. Gorenstein, *Magistrate Judge*), entered on November 27, 2023, dismissing this case after rejecting EMA's claims and Vystar's counterclaims. *See EMA Fin., LLC v. Vystar Corp.*, 704 F. Supp. 3d 385 (S.D.N.Y. 2025). On appeal, EMA and Vystar challenge various aspects of summary judgment rulings the district court entered on March 29, 2021, and November 27, 2023, as well as its rulings on their respective requests for reconsideration, entered on December 20, 2021, and May 16, 2024. We assume the parties' familiarity with the case.

EMA brought this action on February 19, 2019, alleging that Vystar breached the terms of two agreements between the parties—a convertible note (the "Note") and an accompanying Securities Purchase Agreement (the "SPA"). Under the terms of the Note and the SPA, EMA was to lend Vystar $80,000, subject to certain discounts, at a twelve percent interest rate. The Note provided that 180 days after its Issue Date, EMA would have the right to convert any outstanding balance due under the Note into Vystar stock. In its answer, Vystar asserted various affirmative defenses and counterclaims alleging, *inter alia*, that EMA breached the parties' agreements and that the agreements should be rescinded because EMA violated Section 15(a)(1) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78o(a)(1), by acting as an unregistered broker-dealer.

2

On March 29, 2021, U.S. District Judge Andrew L. Carter, Jr. entered an order that, in pertinent part, granted summary judgment for EMA on Vystar's request for rescission under Sections 15(a)(1) and 29(b) of the Exchange Act, 15 U.S.C. §§ 78o(a)(1), 78cc. Judge Carter reasoned that, because the parties' agreements did not require EMA to act as a broker-dealer, the agreements were not voidable under Section 29(b), and that Section 15(a)(1) does not provide for a private right of action. On December 20, 2021, the district court denied Vystar's request for reconsideration of the March 29, 2021, order or, in the alternative, for certification to take an interlocutory appeal. The case was subsequently transferred by consent of the parties to U.S. Magistrate Judge Gabriel W. Gorenstein. On November 27, 2023, Judge Gorenstein entered an order rejecting each of the parties' remaining claims as a matter of law and dismissing the case. On May 16, 2024, Judge Gorenstein granted EMA's request for reconsideration of the November 27, 2023, order but adhered to his original decision. This appeal followed.

"We review *de novo* a district court's grant or denial of summary judgment, viewing the record in the light most favorable to the party against whom summary judgment is sought." *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011).[1] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022).

## I.     March 29, 2021, Ruling on Vystar's Request for Rescission Under Section 29(b)

Our recent decision in *Xeriant, Inc. v. Auctus Fund LLC*, ___ F.4th ___, 2025 WL 1748776 (2d Cir. June 25, 2025), forecloses Vystar's arguments regarding its request for rescission under Section 29(b). In *Xeriant*, we explained that Section 29(b) "permits only the rescission of unlawful

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

contracts, not lawful contracts from which unlawful transactions are made." *Id.* at *1. Accordingly, we held the plaintiff in *Xeriant* could not seek rescission under Section 29(b) because the securities purchase agreement between the plaintiff and the defendant, which included a convertible note, was lawful given that it did not "obligate [the defendant] to act as a dealer in violation of the Exchange Act," *id.*, such as requiring the defendant "to sell converted shares on the market," or "to convert . . . debt into shares, as opposed to accepting repayment of the cash loan." *Id.* at *5–7.

Here, Vystar merely argues that selling converted shares is part of EMA's "business model." Vystar Br. at 7. Vystar does not identify any provision in the SPA or the Note that *requires* EMA to act as a dealer such that the agreements are unlawful. Thus, our reasoning in *Xeriant* applies equally here, and we affirm the district court's March 29, 2021, grant of summary judgment for EMA on Vystar's request for rescission, as well as its December 20, 2021, denial of Vystar's request for reconsideration of that ruling.[2]

## II.     November 27, 2023, Ruling on the Parties' Breach of Contract Claims

Next, we discern no error in the district court's November 27, 2023, ruling rejecting the parties' claims for breach of contract. "Under Delaware law, [parties] must establish the following three elements to succeed on a breach of contract claim: (1) the existence of a contract, whether express or implied; (2) breach of one or more of the contract's obligations; and (3) damages resulting from the breach." *Geico Gen. Ins. Co. v. Green*, 308 A.3d 132, 140 (Del. 2022).

---

[2] To the extent Vystar argues that EMA's purchase of the Note pursuant to the SPA constituted an unlawful securities transaction, this argument fails because the SPA expressly provided that the sale of the Note would be carried out under the exemption from registration in Section 4(a)(2) of the Securities Act, 15 U.S.C. § 77d(a)(2). *See Xeriant, Inc.*, 2025 WL 1748776, at *7 n.10.

**A. EMA's Breach of Contract Claim**

We agree with the district court that EMA failed to show damages resulting from Vystar's refusal to honor the tenth and eleventh conversion notices submitted by EMA on January 15, 2019, and February 5, 2019. Section 3.16 of the Note provided that, upon the occurrence of an "Event of Default," the Note would "become immediately due and payable." Joint App'x at 154. The parties agree that an Event of Default occurred in September 2018, when Vystar failed to maintain an adequate stock reserve as required under the terms of the Note. The Note therefore became "due and payable" at that time. EMA does not dispute that Vystar made a payment on January 31, 2019, that covered the outstanding principal and interest due on the Note; instead, it points to § 3.2 of the Note, which provided that Vystar's failure to honor a notice of conversion within five business days of its delivery constituted an Event of Default. But, as the district court explained, the Note was *already* in default—and, thus, its outstanding balance was already due and payable— when EMA sent its tenth conversion notice on January 15, 2019. Vystar was therefore entitled to repay the remaining balance on the Note rather than honor any further conversion notices at that time. To the extent Vystar delayed in repaying the balance of the Note after that date, EMA has failed to show any damages resulting from that delay. Accordingly, the district court properly rejected EMA's breach of contract claim.[3]

We decline to address EMA's alternative argument that, even if it is not entitled to actual damages, the district court should have permitted it to seek liquidated damages. By repeatedly stating that it was *not* pursuing liquidated damages in this case,[4] EMA waived its right to do so.

---

[3] Because EMA's argument that Vystar should be estopped from refusing to honor EMA's tenth and eleventh conversion notices appears only in its reply, we decline to consider it. *See Meyer v. Seidel*, 89 F.4th 117, 128 (2d Cir. 2023).

[4] *See* Joint App'x at 595 ("[EMA] isn't seeking to enforce any liquidated damages portions, and is seeking

*See Wilkins v. United States*, 598 U.S. 152, 158 (2023) ("[D]octrines like waiver . . . ensure efficiency and fairness by precluding parties from raising arguments they had previously disavowed."). We reject EMA's argument that the district court's discussion of liquidated damages during the May 16, 2024, hearing on EMA's motion for reconsideration precludes a finding of waiver. At the hearing, EMA's counsel reiterated that EMA was not seeking the "default sum" under the Note's liquidated damages clause. Special App'x at 155. And, although the district court discussed the validity of the liquidated damages clause, it stated twice that EMA had not sought damages under that provision. We likewise reject EMA's argument that its liquidated damages claim did not become relevant until the district court *sua sponte* found that Vystar could repay the Note's balance rather than honoring EMA's tenth and eleventh conversion notices. At the core of the parties' dispute is whether Vystar's January 31, 2019 payment satisfied its obligations under the Note; indeed, upon receipt of the payment, EMA immediately notified Vystar that it was holding the payment in escrow until Vystar honored the tenth conversion notice. Nonetheless, despite originally asserting a claim for liquidated damages in its complaint, EMA proceeded to repeatedly disavow that claim and has therefore waived the right to pursue it.[5]

### B. Vystar's Breach of Contract Counterclaim

We likewise discern no error in the district court's rejection of Vystar's breach of contract counterclaim. First, we reject Vystar's argument that the district court erred by finding that interest on the Note began to accrue on January 29, 2018. The Note explicitly provided that interest would

---

contract damages only . . . ."); *id.* at 607 ("EMA is not seeking to enforce any portion of the liqu[id]ated damages provision."); *id.* at 1864–65 ("Defendant[']s citation . . . for the proposition that the Court 'invalidated' the clause at Section 3.16 is a mystery, as that deals with liquidated damages clauses not at issue in this case."). *See also id.* at 2214 n.8 ("Defendant's claim of over-conversion is precluded by the liquidated damages clause allowing EMA to receive 150% of the amount owed. EMA is not seeking damages under this clause but is entitled to use it as an affirmative defense to the claims of over-conversion.").

[5] Given our conclusion that the district court did not err in dismissing EMA's requests for relief, Vystar's arguments regarding its affirmative defenses are now moot.

be calculated "from the date of issuance hereof," and it designated January 29, 2018, as its "Issue Date." Joint App'x at 142. Although Vystar argues that, under Delaware law, interest could not have accrued until EMA disbursed funds to Vystar under the Note, it offers no authority for that proposition. Nor does Vystar offer any support for its argument that, because the Note provided that Vystar was to pay EMA $80,000 plus interest "for value received," *id.*, EMA could not charge interest until Vystar received the lent funds. Rather, even though the SPA separately set forth a "Closing Date" on which EMA would provide the lent funds to Vystar by "purchas[ing]" the Note, *id.* at 161, the Note expressly stated that interest would accrue as of the date the Note was *issued*. Accordingly, the district court properly found that EMA did not breach the terms of the Note by charging interest beginning on January 29, 2018.

Nor did the district court err in rejecting Vystar's argument that EMA improperly deducted $3,200 from the funds it lent Vystar. Section 10(d) of the SPA provides, in pertinent part:

> On or prior to the Closing, [Vystar] shall pay or reimburse to [EMA] a non-refundable, non-accountable sum equal to $3,200.00 as and for the fees, costs and expenses (including without limitation legal fees and disbursements and due diligence and administrative expenses) incurred by [EMA] in connection with [EMA's] due diligence and negotiation, preparation and execution of the Transaction Documents and consummation of the Transactions. [EMA] may withhold and offset the balance of such amount from the payment of its Purchase Price otherwise payable hereunder at Closing, which offset shall constitute partial payment of such Purchase Price in an amount equal to such offset. Except as expressly set forth in this Agreement or the Note to the contrary, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement.

*Id.* at 174. Notwithstanding the broad nature of this provision, Vystar argues that EMA's reduction of the funds it lent Vystar by $3,200 was improper because EMA used those funds to pay its employees, rather than third parties. But, as the district court explained, the SPA expressly provided that the $3,200 offset was "non-accountable." *Id.* Vystar offers no support for its

assertion that the "non-accountable" nature of the offset simply means that EMA did not need to identify the expenses "at the time [they] were incurred." Vystar Br. at 19–20. We are therefore unpersuaded by its argument that EMA could not offset its payment under the Note by $3,200 unless it showed that the funds were paid to third parties.

Finally, we agree with the district court that Vystar suffered no cognizable damages from EMA's failure to follow the conversion process set forth in the Note. The Note provided that, each time EMA submitted a notice of conversion, it was required to convert both (1) a portion of the outstanding principal due under the Note, *and* (2) any interest that had accrued on that principal. The district court found that EMA violated this provision by repeatedly requesting the conversion of principal only (without any corresponding interest) and then requesting the conversion of outstanding interest once the principal had been exhausted. The district court further concluded, however, that no reasonable jury could find that Vystar incurred any damages as a result. We agree. Vystar has failed to show that it was required to pay additional funds, or to convert additional stock, due to EMA's failure to follow the Note's conversion process. If anything, EMA's principal-only stock conversions *reduced* Vystar's payment obligation by accelerating the exhaustion of the Note's balance.

For these reasons, we affirm the district court's November 27, 2023, summary judgment ruling, as well as its May 16, 2024, ruling on EMA's request for reconsideration.

\* \* \*

We have considered the parties' remaining arguments and find them to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

8